UNITED STATES of America,
Plaintiff–Appellee,

v.

Ishmael GALLOP, Defendant–Appellant.

No. 86–5175.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 9, 1987.
Decided Jan. 28, 1988.

Robert Leon Pierson, for defendant-appellant.

Elizabeth Hartley Trimble, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty., on brief), for plaintiff-appellee.

Before RUSSELL, MURNAGHAN and ERVIN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Ishmael Gallop appeals from a conviction after a jury trial on a count of bank larceny in violation of 18 U.S.C. § 2113(b). On April 15, 1986, a federal grand jury in the District of Maryland indicted Ishmael Gallop. Anthony R. Gallagher, a public defender, was designated as the defendant's counsel. Magistrate Paul M. Rosenberg arraigned the defendant on April 26, 1986 at which time he pled not guilty. Subsequently, Gallagher and the United States Attorney's Office worked out a plea agreement and the rearraignment was set for June 13th.

At the rearraignment, Gallagher advised the district court that his client wished to strike the appearance of the federal public defender's office. The defendant had complained to Gallagher that the office had not represented his interests adequately. Gallagher stated that there were obvious disagreements between himself and the defendant, and he felt that he would be unable to work with the defendant any longer as counsel. Finding that an irreconcilable difference existed, the court discharged the public defender. The court also granted a motion to postpone the trial.

On June 19, 1986, the court appointed James F. Garrity to represent the defendant pursuant to the Criminal Justice Act. Garrity filed a motion to suppress the defendant's confession, challenging the voluntariness of the statement. The district judge denied the motion after a hearing on September 11, 1986. The suppression issue was reopened for additional testimony on September 18th and September 22nd, but was again denied.

On September 18th, Garrity informed the court that the defendant no longer wished to be represented by him. Garrity told the court that the relationship between himself and Gallop had entirely broken down. The defendant stated that his second attorney had done an inadequate job because he should have sought a postponement of the first suppression hearing until all parties were present. The district judge noted that the defendant had previously discharged his first counsel and indicated his concern that the defendant was attempting to obstruct the orderly procedure of the court. Under the circumstances, the district judge gave the defendant the choice of proceeding *pro se* or continuing with his second attorney. When the defendant indicated that he did not know how to represent himself, the court said that it would proceed with Garrity as counsel.

Garrity then indicated that he had another problem relating to his representation of the defendant but that the problem could not be revealed because of the confidential relationship between attorney and client. He represented that the problem might arise at trial. The district judge noted that the issue could be taken up at trial if it ever arose.

On September 22nd, a day before trial, the defendant renewed his request for a new attorney which was again denied. The district judge noted that Garrity had done a competent job representing the defendant. The defendant then indicated that he had no choice but to represent himself. The court asked Garrity to remain as a backup counsel.

On the day of trial, the defendant requested a postponement stating that he had not had adequate time to prepare a defense. The court denied the motion for postponement and again denied the request for another attorney.

The defendant was convicted by a jury of bank larceny and was sentenced to a term of incarceration of ten years and an imposition of $50 special assessment.

I.

An essential element of the Sixth Amendment's protection of right to counsel is that a defendant must be afforded a reasonable opportunity to secure counsel of his own choosing. *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932); *United States v. Burton,* 584 F.2d 485, 488–89 (D.C.Cir.1978), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979). However, the right to counsel of defendant's choosing is not absolute. *Sampley v. Attorney General of North*

*Carolina,* 786 F.2d 610, 612–13 (4th Cir. 1986), *cert. denied,* —— U.S. ——, 106 S.Ct. 3305, 92 L.Ed.2d 719 (1986). Such right must not obstruct orderly judicial procedure and deprive courts of the exercise of their inherent power to control the administration of justice. *Id.* at 613; *United States v. Bragan,* 499 F.2d 1376, 1379 (4th Cir.1974). An indigent defendant, moreover, has no right to have a particular lawyer represent him and can demand a different appointed lawyer only with good cause. *United States v. Allen,* 789 F.2d 90, 92 (1st Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 164, 93 L.Ed.2d 103 (1986). The determination of whether or not the motion for substitution of counsel should be granted is within the discretion of the trial court and the court is entitled to take into account the countervailing state interest in proceeding on schedule. *Morris v. Slappy,* 461 U.S. 1, 13, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983); *Sampley,* 786 F.2d at 613.

■ In evaluating whether the trial court abused its discretion in denying defendant's motion for substitution of counsel, the First and Ninth Circuits have held that the appellate courts should consider the following facts: Timeliness of the motion; adequacy of the court's inquiry into the defendant's complaint; and whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense. *Allen,* 789 F.2d at 92; *United States v. Whaley,* 788 F.2d 581, 583 (9th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 458, 93 L.Ed.2d 404 (1986). In the present case, the motion for substitution of counsel was made only five days prior to trial. As the trial court noted, the defendant had already been granted a similar motion which resulted in the trial being postponed for three months. In *United States v. Mastroianni,* 749 F.2d 900 (1st Cir.1984), the court held that the trial court did not abuse its discretion in denying a motion by an indigent defendant to substitute counsel four days before commencement of trial when there was little or no assurance that substitute counsel would be adequately prepared in time, and the defendant had been repre-

sented throughout by the federal public defender's office. *Id.* at 913–14. Likewise, the record in this case indicates a lack of any assurances by the defendant that delay would not result from such substitution. A request for change in counsel cannot be considered justifiable if it proceeds from a transparent plot to bring about delay. *See Morris v. Slappy,* 461 U.S. at 13, 103 S.Ct. at 1617.

■ The record also indicates that the district judge adequately inquired into the defendant's complaint with regard to his second counsel. According to the defendant's testimony, he sought a substitution of counsel because of inadequate representation by Garrity. The defendant asserted that if Garrity had been adequately representing him, he would have asked for a postponement of the suppression hearing until all witnesses were present. The defendant has clearly stated that he was not seeking a new counsel "because no personal conflict or whatsoever" (sic). The failure or refusal by Garrity to seek postponement of the hearing clearly did not constitute inadequate representation, especially in light of the fact that the remaining law enforcement witnesses to the defendant's confession testified at subsequent suppression hearings. The district judge, thus, acted within his discretion in rejecting the line of argument advanced and finding that Garrity's representation had been competent.

■ More troublesome, however, is the statement by the defense counsel that he believed that the relationship between himself and the defendant had entirely broken down and that there were additional problems in continuing the representation that could not be disclosed because of the confidential relationship. The district judge, with the concurrence of Garrity, decided that the issue could be taken up at trial if it ever arose. The failure by the trial court to proceed further to resolve the issue was not an abuse of discretion, especially when there is no evidence in the record to indicate that the question was reasserted during the trial, *see Maynard v. Meachum,*

545 F.2d 273, 278 (1st Cir.1976); *United States v. Morrissey*, 461 F.2d 666, 670 (2d Cir.1972), or that it impaired Garrity's performance as stand-by counsel.

There is also no evidence in the record to indicate that the conflict between Garrity and the defendant was so great that it resulted in total lack of communication. Indeed, Garrity assisted the defendant during the trial and cross-examined the FBI agent who had witnessed the defendant's confession.

## II.

The defendant, in addition to the objections already dealt with, also complains that the trial court did not properly determine on the record whether the waiver was intelligent, knowing, and voluntary. He argues that the trial court's failure to examine the effectiveness of the waiver denied him the Sixth Amendment right to counsel.

▆ As other circuits have held, once the trial court has appropriately determined that a substitution of counsel is not warranted, the court can insist that the defendant choose between continuing representation by his existing counsel and appearing *pro se*. *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir.1987); *United States v. Welty*, 674 F.2d 185, 188 (3d Cir.1982); *McKee v. Harris*, 649 F.2d 927, 930–31 (2d Cir.1981), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); *Wilks v. Israel*, 627 F.2d 32, 35–36 (7th Cir.1980), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 874, 66 L.Ed.2d 811 (1981); *United States v. Davis*, 604 F.2d 474, 483 (7th Cir.1979); *Maynard*, 545 F.2d at 278. A refusal without good cause to proceed with able appointed counsel is a "voluntary" waiver. *Maynard*, 545 F.2d at 278. Since the trial judge properly exercised his discretion in finding that the defendant did not have justifiable reasons for requesting a further substitution of counsel, Gallop's argument that his waiver was not voluntary is without merit.

▆ Even if the choice to proceed *pro se* is voluntary, however, the court must still ensure that the decision to proceed *pro se* is made knowingly and intelligently. *Padilla*, 819 F.2d at 956; *Welty*, 674 F.2d at 188. The mere fact that an accused may understand that he has right to counsel and desires to waive the right does not automatically end the court's responsibility. *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948). As the Supreme Court noted in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975):

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Id.* at 835, 95 S.Ct. at 2541 (*quoting Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)).

While the *Faretta* Court recognized the absolute right of a defendant to represent himself as long as that decision is made knowingly, intelligently, and voluntarily, it did not lay down detailed guidelines concerning what tests or lines of inquiry a trial judge is required to conduct to determine whether the defendant's decision was "knowing and intelligent." The circuit courts have split on the type of record necessary to establish whether a defendant's waiver of counsel is knowing and intelligent. The Third Circuit requires the trial judge to make a searching inquiry on the record and the failure to do so would be a reversible error. *See Welty*, 674 F.2d at 192–93. In the Sixth Circuit, the court affirmed the conviction of a defendant who waived his right to counsel without the benefit of a formal inquiry, but it exercised its supervisory powers and now requires the district courts to follow the model inquiry set forth in *1 Bench Book for United States District Judges* 1.02–2 (3d ed. 1986). *United States v. McDowell*, 814 F.2d 245, 249–50 (6th Cir.1987); *see also United States v. Bailey*, 675 F.2d 1292, 1300 (D.C. Cir.1982), *cert. denied sub nom. Walker v.*

*United States*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982) (exercising supervisory power to enjoin upon the district court the practice of making clear on the record).

In contrast, in the majority of the circuits, including the Fourth Circuit, the trial judge is merely required to determine the sufficiency of the waiver from the record as a whole rather than from a formalistic, deliberate, and searching inquiry. *See Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1065 (11th Cir.1986); *Richardson v. Lucas*, 741 F.2d 753, 756–57 (5th Cir.1984); *United States v. Hafen*, 726 F.2d 21, 25–26 (1st Cir.1984), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984); *United States v. Kimmel*, 672 F.2d 720, 721–22 (9th Cir.1982); *United States v. Trapnell*, 638 F.2d 1016, 1026–27 (7th Cir.1980); *United States v. Tompkins*, 623 F.2d 824, 828 (2d Cir.1980); *United States v. King*, 582 F.2d 888, 890 (4th Cir.1978); *United States v. Pilla*, 550 F.2d 1085, 1093 (8th Cir.1977), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2954, 53 L.Ed.2d 1080 (1977). While those cases have expressed the appeal courts' preference that the trial judge discuss with the defendant in open court the dangers and disadvantages of self-representation, the failure to do so would not automatically be a reversible error. *See McDowell*, 814 F.2d at 249.

■ Although the Fourth Circuit requires no particular form of interrogation, *King*, 582 F.2d at 890, we have indicated that "[a]t a minimum the district court should, before permitting an accused to waive his right to counsel, explain the charges and the possible punishments...." *Aiken v. United States*, 296 F.2d 604, 607 (4th Cir.1961). The district judges also should "develop on the record the educational background, age and general capabilities of an accused, so that the ability of an accused to grasp, understand and decide is fully known" to the trial court and fully disclosed by the record. *Townes v. United States*, 371 F.2d 930, 934 (4th Cir.1966), *cert. denied*, 387 U.S. 947, 87 S.Ct. 2083, 18 L.Ed.2d 1335 (1967). The failure to do so, however, would not automatically render the proceedings unconstitutional. *Aiken*, 296 F.2d at 607.

In the present case, the district judge did not specifically discuss with the defendant the dangers or disadvantages of self-representation. Without a specific inquiry by the district court on the record, or other facts which show that Gallop had sufficient background or had been apprised of his rights by some other source, a determination that the defendant made his choice "with eyes open" cannot be made by a reviewing court without speculation.

What is clear in the instant case is that the defendant had tried to change his counsel for the second time only five days prior to trial. His refusal to proceed with Garrity was without good cause. The district judge properly noted his concern that the defendant was trying to obstruct the orderly procedure of the court. The defendant was also adamant in his rejection of Garrity. In determining the sufficiency of the waiver, the court should be entitled to take into account not only the countervailing advantage in proceeding on schedule, *see Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610, but also the defendant's insistence that he not be represented by a particular counsel. *See United States v. Leifried*, 732 F.2d 388, 390 (4th Cir.1984). The defendant cannot be allowed to continue the practice, with little or no apparent reason, of hiring and firing attorneys. At the same time, the court should not force such a capricious defendant to cooperate with an attorney if he is as adamant as the defendant here was that he cannot proceed with the appointed representation. The proper procedure, though not necessarily the exclusive one, is to order the defendant, as the district court had done in the instant case, to proceed *pro se* but also to order the appointed counsel to remain as a backup.

■ We believe that there must be some limit to the defendant's ability to manipulate the judicial system even if he is unknowing and unintelligent. While a knowing, intelligent, and voluntary waiver of counsel generally is required before a defendant is allowed to proceed *pro se*,

where a district judge finds, as was done implicitly in the instant case, that the defendant may reject every counsel for the purposes of delaying the trial, the court must be allowed to impose restraints. Therefore, even if the district court had failed to inquire into the knowingness and intelligence of the defendant's waiver, we find that it was not a reversible error, given that generally adequate assistance of counsel was guaranteed.

### III.

█ The defendant was convicted of bank larceny pursuant to 18 U.S.C. § 2113(b). As an element of the crime and as a prerequisite to federal jurisdiction, the government must prove that the institution from which the money was stolen was a bank as defined in 18 U.S.C. § 2113(f).[1] *United States v. Wingard*, 522 F.2d 796, 797 (4th Cir.1976), *cert. denied*, 423 U.S. 1058, 96 S.Ct. 792, 46 L.Ed.2d 648 (1976).

In the case at bar, the government sought to prove this element by showing that the victim bank, Annapolis Bank and Trust Company, was insured by the FDIC. It introduced the following testimony of Randall Mark Roby, an audit officer from the Mercantile–Safe Deposit:

Q. What is the relationship between the Mercantile–Safe Deposit and Trust Company to the Annapolis Bank and Trust Company?

Roby. Mercantile–Safe Deposit and Trust Company is the lead bank for Mercantile Bank Shares Corporation and provides the auditing services for the affiliates within the holding company.

Q. And now this bank and trust is a member of that holding company, is that right?

Roby. Yes, ma'am.

....

Q. What conclusions did you reach after your audit?

Roby. ... The twenty-one thousand, to the best of our abilities had been removed from the bank premises.

Q. What did you do when you reached those conclusions?

Roby. ... We informed the FBI, the FDIC a bonding company and local police authorities.

Q. In December 1985 were the, was the Mercantile and its subsidiaries insured by the Federal Deposit Insurance Company?

Roby. Yes, ma'am.

The defendant argues that this testimony, by itself, was insufficient to establish that the Annapolis Bank and Trust Company was insured by the Federal Deposit Insurance Corporation.[2] He argues that no certificate of insurance showing that the insurance was current as of the day of the theft was introduced. To support this argument, the defendant's brief cites *United States v. Ford*, 642 F.2d 77 (4th Cir.1981), *cert. denied*, 451 U.S. 917, 101 S.Ct. 1996, 68 L.Ed.2d 310 (1981). In that case, this Court found that a testimony from the branch manager and a certificate of insurance "satisfied the minimum requirements for establishing federal jurisdiction under the bank robbery statute ..." *Id.* at 78.

As the government correctly notes in its brief, while a certificate of insurance was introduced in *Ford*, one was not introduced

---

1. 18 U.S.C. § 2113(f) provides as follows:
    As used in this section the term "bank" means any member bank of the Federal Reserve System, and any bank, banking association, trust company, savings bank, or other banking institution organized or operating under the laws of the United States, and any bank the deposits of which are insured by the Federal Deposit Insurance Corporation.

2. It does not appear from the record that the defendant had challenged the insufficiency of evidence during the trial. Generally, absent plain or fundamental error, the court need not consider on appeal legal points which were

available to the appellant but not pressed for the district court's consideration. *United States v. Seidlitz*, 589 F.2d 152, 160 (4th Cir.1978), *cert. denied*, 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 396 (1979). However, under § 2113, a bank must be federally insured in order to satisfy not only an element of the crime but to confer federal jurisdiction on the court. *United States v. Harris*, 530 F.2d 576, 578 (4th Cir.1976). Jurisdictional questions are of primary consideration and can be raised at any time. *McGrath v. Kristensen*, 340 U.S. 162, 167, 71 S.Ct. 224, 228, 95 L.Ed. 173 (1950).

in *United States v. Safley*, 408 F.2d 603 (4th Cir.1969), *cert. denied*, 395 U.S. 983, 89 S.Ct. 2147, 23 L.Ed.2d 772 (1969). In *Safley*, this Court held that a testimony from a bank employee that the deposits "are" insured by the FDIC was sufficient evidence from which "the jury could draw the reasonable inference that the bank was insured at the time of the robbery." *Id.* at 605. *See also United States v. Taylor*, 728 F.2d 930, 933 (7th Cir.1984) (uncontroverted testimony by bank's vice president was sufficient); *United States v. Baldwin*, 644 F.2d 381, 385 (5th Cir.1981) (either the certificate of insurance or uncontradicted testimony was sufficient); *United States v. Campbell*, 616 F.2d 1151, 1153 (9th Cir. 1980), *cert. denied*, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980) (uncontradicted testimony of two bank employees was sufficient); *United States v. Williams*, 592 F.2d 1277, 1281–82 (5th Cir.1979) (testimony from two bank officers was sufficient). In stating that the evidence presented, including a certificate of insurance, satisfied the minimum requirements in *Ford*, we did not mean to imply that a certificate of insurance was a *sine qua non* of proof of jurisdiction.

Gallop also asserts that the evidence was inadequate since Roby never testified as to whether Annapolis Bank and Trust Company was a subsidiary of Mercantile. Roby, however, did testify that Mercantile–Safe Deposit and Trust Company is the lead bank for Mercantile Bank Shares Corporation and provides the auditing services for the affiliates within the holding company. He stated that Annapolis Bank and Trust Company is a member of that holding company. He also testified that Mercantile[3] and its *subsidiaries*[4] were insured by the Federal Deposit Insurance Company.

When the appeals court determines the sufficiency of evidence, it should view the evidence in a light most favorable to the prosecution. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1941). Therefore, although what was presented by the government in this case is extremely meager, we believe that there was sufficient evidence from which the jury could reasonably infer that Annapolis Bank and Trust was a subsidiary of Mercantile–Safe Deposit and Trust Company.[5]

## IV.

For the foregoing reasons, we affirm the defendant's conviction.

AFFIRMED.

---

**3.** It is unclear whether the prosecutor, in asking this question, was referring to Mercantile–Safe Deposit and Trust Company or to Mercantile Bank Shares Corporation. However, since the FDIC insures deposits held by banks, he was probably referring to Mercantile–Safe Deposit and Trust Company.

**4.** Despite the government's assertions to the contrary, Roby never testified that Mercantile and its *affiliates* were insured by the FDIC.

**5.** There is no evidence in the record which indicates that the judge, in framing his instructions, took judicial notice of the publicly well-known association as parent and subsidiary of the Mercantile–Safe Deposit and Trust Company and the Annapolis Bank and Trust Company.