Vacated and remanded by published opinion. Judge GREGORY wrote the majority opinion, in which Judge KEENAN joined. Judge SHEDD wrote a dissenting opinion.
GREGORY, Circuit Judge:
Respondent-Appellant Thomas Black-ledge has been civilly committed as a sexually dangerous person under the Adam Walsh Child Protection and Safety Act of 2006 (“Adam Walsh Act”), codified at 18 U.S.C. §§ 4247-48. Prior to a hearing on his commitment, Blaekledge successfully moved for the appointment of an expert forensic examiner, who opined that he was indeed a sexually dangerous person. Blaekledge then sought the appointment of a second expert and an extension of the deadline for discovery. A magistrate judge denied both motions without prejudice, and when counsel renewed the motions after the discovery deadline had passed, the motions were again denied. Citing an internal ethical conflict, Black-ledge’s attorney later moved to withdraw as counsel, which the magistrate judge denied. Counsel appealed the ruling to the district court and filed a second motion to withdraw, this time also noting that Blaekledge had filed a bar complaint against her. The district court denied both the appeal of the magistrate judge’s ruling and the second motion to withdraw.
On appeal, Blaekledge challenges the denial of the motions to extend and reopen the discovery period, motions to withdraw as counsel, and motions to appoint a second expert. Because we find that the district court abused its discretion in denying the motions to withdraw as counsel, we vacate and remand.
I.
As relevant to these proceedings, we briefly summarize Blackledge’s criminal history.[1] In 1960, at age 15, Blaekledge was convicted of first-degree murder in Wyoming for bludgeoning his 15-year-old girlfriend to death after she rebuffed his sexual advances. He was sentenced to life imprisonment, but released at age 23 after serving 8 years in state prison. On October 22, 1986, Blaekledge was sentenced in the United States District Court for the District of Colorado to 12 years of imprisonment and 5 years of probation for several counts of mailing and producing child pornography. For the same conduct, he was also sentenced to 20 years’ imprisonment for sexual exploitation of children in Larimer County, Colorado and in Weld County, Colorado, to run concurrently with his federal sentence. Blaekledge also self-reported several undetected incidents of child molestation, involving between eight and twelve child victims ranging from age 5 to age 17.
Following his release, Blaekledge violated the terms of his probation by possessing images of nude children on his home computer. He was consequently sentenced *191 on April 27, 2005 to 6 years’ imprisonment by the United States District Court for the District of Colorado. He was also sentenced to 6 years’ imprisonment in Weld County, Colorado on May 3, 2004 for one count of sexual exploitation, to run concurrent with the federal sentence for the probation violation. Blackledge had an expected release date of September 23, 2009. On September 15, 2009, however, the Government filed a Certification of a Sexually Dangerous Person (“Certification”) pursuant to 18 U.S.C. § 4248(a) in the United States District Court for the Eastern District of North Carolina, and his release was stayed.
The court appointed the Federal Public Defender’s Office to represent Blackledge, and on March 11, 2011, Sonya Allen (“Attorney Allen”) entered an appearance on Blackledge’s behalf. Attorney Allen moved for the appointment of Dr. Terence Campbell as an expert forensic examiner, which a magistrate judge granted on August 4, 2011. After interviewing Black-ledge and considering various materials, Dr. Campbell opined that he was indeed a sexually dangerous person under the Adam Walsh Act.
On October 11, 2011, Attorney Allen moved for the appointment of a second expert, Dr. Joseph Plaud, and requested an extension of the time for discovery. The magistrate judge denied the motions on November 4, 2011 without prejudice, finding that Blackledge failed to show the need for the appointment of a second expert. The magistrate judge granted a later request to extend discovery until December 22, 2011, and the district court set a bench trial for June 14, 2012. On April 17, 2012, two additional attorneys entered appearances as Attorney Allen’s co-counsel, and the court continued the trial until August 2, 2012. On June 14, 2012, Attorney Allen filed a sealed motion renewing Blackledge’s request to appoint Dr. Plaud and asking the court to reopen discovery and continue the trial. The magistrate judge denied the motions on July 2, 2012, finding that Blackledge again failed to show good cause for the appointment of a second expert, and that appointment at that stage would disrupt the court’s prior scheduling orders.
On July 10, 2012, Attorney Allen filed a motion to withdraw as counsel on the ground that an internal conflict had arisen and she could “no longer continue to ethically represent” Blackledge. J.A. 80. Speaking carefully to avoid violating client confidences or revealing trial strategies, Attorney Allen represented at a hearing on the motion that her internal ethical conflict arose from the fact that Black-ledge requested to see certain items that she could not provide him. She added that Blackledge wished to proceed with new counsel and that she had located a panel attorney experienced in § 4248 hearings who could take over the matter immediately. Blackledge also stated at the motions hearing that Attorney Allen had failed to provide him certain documents he requested, and that he felt ignored by her, which made it very difficult for them to communicate.
Blackledge complained in particular about Attorney Allen’s failure to obtain a second expert, and Attorney Allen explained that she did not renew the motion earlier because she thought she had more time to do so. While Attorney Allen asserted that Dr. Plaud said only that it was possible that he would find Blackledge not to be a sexually dangerous person, her co-counsel represented that Dr. Plaud had preliminarily indicated that he could testify favorably for Blackledge. Attorney Allen asserted that she had failed at allaying Blackledge’s concerns about his defense, and that, as a result of her error, they no *192 longer had a rapport that allowed him to trust her. When asked if she could represent Blackledge zealously if the motion were denied, Attorney Allen stated that “it would be with great difficulty,” though she is a professional and “would certainly do [her] job.” J.A. 101. She opined that increasing the frequency of communications would not repair their relationship since she could not change her prior failure to timely renew the motion, which was the content of the discussions.
The magistrate judge denied the motion to withdraw, finding that it was untimely and that there was no breakdown in the attorney-client communications that prevented an adequate defense. On July 23, 2012, Attorney Allen appealed the magistrate judge’s ruling to the district court, and on July 30, 2012, she filed a second motion to withdraw. The second motion asserted that Blackledge had filed a state bar grievance against her, causing a conflict of interest where she could not defend against the bar complaint while also representing Blackledge.
The bench trial began on August 2, 2012, and the district court first took up the appeal of the magistrate judge’s ruling and the second motion to withdraw. Attorney Allen described her relationship with Blackledge as follows: “our relationship has deteriorated to a point that we cannot discuss his ease, strategies of his case. We cannot effectively communicate. That has tied my hands with regard to being able to represent him effectively.” J.A. 148-49. She continued: “One of the essential parts of defending someone would be whether they decide to testify or not and how you would go about preparing them for that testimony. That’s not even something I can discuss with Mr. Black-ledge, so we have not been able to address that appropriately.” J.A. 151. Blackledge also explained to the court that he had not “even really had any trial preparation with [Attorney Allen]” and that he had not seen her “for quite sometime [sic].” Id. Attorney Allen added that the bar complaint had put her “at odds with” Blackledge. J.A. 149.
The district court told Blackledge that he might have to proceed pro se if the motions were granted, and Blackledge stated that he would proceed with Attorney Allen if forced to because he could not defend himself. The court denied the appeal and the second motion, finding that Attorney Allen had not abandoned Black-ledge as he claimed and that there was not a breakdown in communications that would prevent an adequate defense. Attorney Allen moved to bifurcate the trial so that the available witnesses could testify, but Blackledge would be allowed to later present an expert opinion from Dr. Plaud. The court denied the motion to bifurcate, and the trial proceeded.
At trial, the Government presented the testimony of two expert witnesses, Dr. Christopher North and Dr. Campbell, and the written report of a third expert witness, Dr. Tonya Cunic. All three experts diagnosed Blackledge with pedophilia— sexually attracted to boys and girls, nonexclusive type — among other psychiatric disorders. All three experts concluded that Blackledge met the criteria for a sexually dangerous person under § 4248. Blackledge did not testify or present evidence.
On August 10, 2012, the court found by clear and convincing evidence that Black-ledge is a sexually dangerous person under the Adam Walsh Act and ordered his commitment. The court specifically found that Blackledge engaged in child molestation and sexually violent conduct, suffers from pedophilia and antisocial personality disorder, and, as a result, would have serious difficulty refraining from reoffending.
*193 II.
An individual in the custody of the Federal Bureau of Prisons may be civilly committed under § 4248 if the Government proves in a hearing that the person is a sexually dangerous person. 18 U.S.C. § 4248(d). The Government must prove each of the following by clear and convincing evidence: (1) the person “has engaged or attempted to engage in sexually violent conduct or child molestation” (“prior conduct” element); (2) the person “suffers from a serious mental illness, abnormality, or disorder” (“serious mental illness” element); and (3) “as a result of’ such condition, the person “would have serious difficulty in refraining from sexually violent conduct or child molestation if released” (“volitional impairment” element). 18 U.S.C. § 4247(a)(5), (6), 4248. United States v. Hall, 664 F.3d 456, 458 (4th Cir.2012). Blackledge has stipulated that he engaged in sexually violent conduct or child molestation or attempted to do so, and that he suffers from pedophilia, a serious mental illness, abnormality, or disorder. The trial thus centered on whether he satisfies the volitional impairment element.
Blackledge argues on appeal that the court abused its discretion in denying his motions to extend and reopen discovery, motions to withdraw as counsel, and motions to appoint Dr. Plaud. We hold that the court did abuse its discretion in denying the motions to withdraw and remand for the court to reconsider these motions by engaging in a thorough inquiry as to the extent of Attorney Allen’s conflict. We therefore need not address Black-ledge’s remaining arguments.
III.
A.
We review the denial of a motion to withdraw for abuse of discretion. United States v. Johnson, 114 F.3d 435, 442 (4th Cir.1997) (citing United States v. Mullen, 32 F.3d 891, 895 (4th Cir.1994)). Black-ledge argues that Attorney Allen abandoned his case during the time in which she should have renewed the motion to appoint Dr. Plaud, and thus had a significant conflict presented by her interest in protecting her own professional reputation thereafter. He maintains that because he has a right to counsel under the Adam Walsh Act,[2] this right necessarily includes a due process right to the effective assistance of counsel. Blackledge asserts that the court abused its discretion when it denied the motions because it forced him to proceed with ineffective assistance of counsel.
The Government argues in response that Blackledge was not prejudiced by the denial of the motions because he remained represented by one of Attorney Allen’s co-counsel,[3] and because Attorney Allen indicated that she was capable of representing him despite her asserted internal ethical conflict and the bar complaint, albeit with great difficulty. The Government further argues that Attorney Allen ably represented Blackledge, filing motions on his behalf during the time in which he says he was abandoned and cross-examining the relevant witnesses at trial.
*194 B.
In deciding whether a district court has abused its discretion in denying a motion to withdraw or to substitute counsel, we consider three factors: (1) timeliness of the motion; (2) adequacy of the court’s inquiry; and (3) “whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense.” United States v. Gallop, 838 F.2d 105, 108 (4th Cir.1988) (internal citations omitted). If the court abused its discretion, the ruling is subject to harmless error review. See United States v. Horton, 693 F.3d 463, 467 (4th Cir.2012). We review the court’s factual findings for clear error and its legal conclusions de novo. Hall, 664 F.3d at 462. “A finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” Id. (internal citations omitted).
 Turning to the first factor, it appears that at least the second motion to withdraw was untimely. Attorney Allen filed the first motion on July 10, 2012, slightly more than three weeks before trial. The magistrate judge noted the court’s difficulty in scheduling hearings so that all the necessary witnesses could be available, and Blackledge acknowledged that granting the motion would require another continuance so that new counsel could prepare. Consistent with our prior holding that a motion to substitute counsel filed two weeks before the relevant hearing was timely, the initial motion to withdraw in this case was likely timely. See United States v. Jennette, 387 Fed.Appx. 303, 307 (4th Cir.2010). However, the second motion was filed on July 30, 2012, only three days before trial. The district court noted that it had a very busy trial calendar for August and September, and that granting the motion at that point would frustrate its scheduling orders. Although the district court was certainly on notice that Attorney Allen wished to withdraw as counsel after the first motion was filed, “[i]n considering timeliness when a defendant requests substitution of counsel, ‘the court is entitled to take into account the ... public interest in proceeding on schedule.’ ” Mullen, 32 F.3d at 895 (internal citations omitted). As such, this factor weighs somewhat in favor of the court’s ruling.
Turning to the second factor, however, the record reveals that the district court failed to engage in an adequate inquiry. “When a defendant raises a seemingly substantial complaint about counsel, the judge ‘has an obligation to inquire thoroughly into the factual basis of defendant’s dissatisfaction.’ ” Id. at 896 (internal citations omitted). “An inquiry into the reasons for a defendant’s dissatisfaction with his or her lawyer is necessary for the trial court to determine whether good cause for substitution of counsel exists.” Id. (internal citations omitted). “The district court is far better situated than we are to observe and inquire into the state of the relationship between a defendant and his appointed counsel, and thus, where the district court has met its ‘obligation to inquire thoroughly into the factual basis of defendant’s dissatisfaction,’ ... we apply the ordinary standard of review to its factual findings: clear error.” United States v. Smith, 640 F.3d 580, 590 (4th Cir.2011) (citing Mullen, 32 F.3d at 896). While motions to substitute counsel often arise at the defendant’s urging, when the attorney also seeks to withdraw, the court must thoroughly inquire into the factual basis of any conflicts asserted by counsel.
In this case, the district court did not meet its obligation to thoroughly inquire into the extent of the communications breakdown or the basis of the assert *195 ed conflict. Despite the representations from Attorney Allen and Blaekledge on the morning of trial that they had not done any trial preparation or spoken about whether Blaekledge would testify, the court did not ask when they had last seen each other or communicated about the case.[4] Tasked with reviewing the motions de novo, the district court erred in failing to examine how the communications between Blaekledge and Attorney Allen had fared since the magistrate judge’s inquiry two weeks earlier. The court emphasized Attorney Allen’s competence as a lawyer, but an attorney’s competence cannot cut short the inquiry because, “[e]ven if a defendant’s counsel is competent, a serious breakdown in communication can result in an inadequate defense.” United States v. Musa, 220 F.3d 1096, 1102 (9th Cir.2000). Most significantly, the district court failed entirely to inquire about the internal ethical conflict that Attorney Allen had earlier raised and whether this had been resolved since the first hearing. The court’s failure to probe deeply into the basis of Attorney Allen’s conflict seriously undermines its decision, and this factor weighs heavily against the court’s ruling.
Turning to the third factor, because the district court failed to engage in an adequate inquiry, its factual determination that there was not a total breakdown in communication preventing an adequate defense is not entitled to clear error review. See Smith, 640 F.3d at 590. Even if we were to review this finding for clear error, however, this factor likewise weighs against the district court’s ruling.
Firstly, a conflict of interest emerged once Attorney Allen failed to timely renew the motion to appoint Dr. Plaud before the discovery deadline passed. We find useful the Supreme Court’s decision in Maples v. Thomas, in which a post-conviction petitioner’s attorneys abandoned their representation of him and missed a critical deadline, thereby causing a procedural default of the petitioner’s claims. — U.S. —, 132 S.Ct. 912, 916-25, 181 L.Ed.2d 807 (2012). While dicta, the Supreme Court found in Maples that “a significant conflict of interest arose for the firm once the crucial deadline passed” because “the firm’s interest in avoiding damage to its own reputation was at odds with [the client’s] strongest argument” for excusing the procedural default. Id. at 925 n. 8.
In this case, we need not decide whether Attorney Allen actually abandoned Black-ledge as in Maples because a conflict arose from the fact that the alleged abandonment was Blackledge’s strongest argument for excusing the untimeliness of the renewed motion. Indeed, we recently recognized in the context of federal habeas proceedings that “a clear conflict of interest exists in requiring ... counsel to identify and investigate potential errors that they themselves may have made....” Gray v. Pearson, 526 Fed.Appx. 331, 334 (4th Cir.2013). This conflict exists irrespective of whether the attorney is ultimately found to have erred. See id. at 334-35. Likewise, *196 a conflict existed here, because, in order to argue that the lateness of the renewed motion should be excused, Attorney Allen would have had to assert her own ineffectiveness. This conflict further undermined Blackledge’s trust in Attorney Allen and strained their ability to communicate.[5]
Secondly, in her second motion to withdraw, Attorney Allen explained that Black-ledge had recently “indicated that he intends to file a complaint with the North Carolina State Bar against counsel because of her failure to obtain an expert in his case, unless she removes herself from his case.” J.A. 120. As in Maples, this threat and the subsequent filing of a bar complaint against Attorney Allen for her conduct thus put her own professional interests directly at odds with those of her client’s interests. Certainly, not every bar complaint against an attorney by her client will result in a conflict of interest, and we have previously expressed our unwillingness to “invite [those] anxious to rid themselves of unwanted lawyers to queue up at the doors of bar disciplinary committees on the eve of trial.” United States v. Burns, 990 F.2d 1426, 1438 (4th Cir.1993). However, in this case, Blackledge threatened and ultimately submitted a seemingly non-frivolous grievance against Attorney Allen that forced her to choose between protecting her own reputation and arguing in her client’s best interest that Blackledge should not be made to bear the consequence of her own errors in submitting the renewed motion to appoint Dr. Plaud.
Thirdly, Attorney Allen also asserted an internal ethical conflict, and because the district court failed to conduct an adequate inquiry, it is unclear if this conflict was ever resolved prior to trial. Moreover, the district court made no inquiry whatsoever into the scope and nature of this conflict. As a result, we have no way of knowing whether Attorney Allen’s internal ethical conflict was indeed so significant that it required her withdrawal as counsel. The fact that she told the magistrate judge that she would represent Blackledge zealously “with great difficulty” if the motion were denied, J.A. 101, is of little help, because, having been made aware of its existence, the court had a sua sponte obligation to examine the extent of this conflict. See Mickens v. Taylor, 240 F.3d 348, 357-58 (4th Cir.2001) (“[A] trial court must inquire into a conflict of interest ‘when it knows or reasonably should know that a particular conflict exists.’ ”) (quoting Cuyler v. Sullivan, 446 U.S. 335, 347, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). Indeed, to the extent that Attorney Allen did opine that she could continue to represent Blackledge, this assertion cannot be isolated from her repeated protestations that she could not do so ethically.
Notwithstanding this lack of clarity as to the extent of the internal ethical conflict, Attorney Allen’s delay in renewing the motion to appoint Dr. Plaud and the bar complaint against her, taken together, created a conflict of interest. As such, we must consider whether the conflict resulted in a total breakdown in communications *197 preventing an adequate defense. “A total lack of communication is not required,” Johnson, 114 F.3d at 443 (emphasis added), but rather our concern is with “a ‘breakdown’ of attorney-client communication so great that the principal purpose of the appointment — the mounting of an adequate defense incident to a fair trial — has been frustrated.” Smith, 640 F.3d at 588.
The most telling evidence of the extent of the breakdown and its impact on Black-ledge’s defense is the assertion from Attorney Allen and Blackledge on the morning of the trial that they failed to engage in trial preparation or discuss whether Black-ledge would testify. The dissent overstates the extent to which Attorney Allen conferred with Blackledge about whether he would testify, as she declined the court’s offer to take a recess in order to do so, citing the fact that she had spoken with him “just briefly” in deciding not to present any witnesses or evidence. J.A. 233. In Jennette, we held that a court abused its discretion in denying a motion to substitute counsel prior to a sentencing hearing in light of the fact that both counsel and the defendant “stated that they had not had a chance to review the PSR together, and indeed had not really spoken since the trial concluded, certainly a fundamental step for adequate representation at sentencing.” 387 Fed.Appx. at 307.
In this case, Attorney Allen labored under a conflict of interest that caused her communications with Black-ledge to be so broken that a “fundamental step for adequate representation” — basic trial preparation — failed to occur. As we have previously noted, “it is the marriage of the attorney’s legal knowledge and mature judgment with the defendant’s factual knowledge that makes for an adequate defense.” Smith, 640 F.3d at 588. In this case, because of the communications breakdown, Blackledge presented no evidence or testimony in proceedings that, like a sentencing hearing, often turn on mitigating evidence as to the respondent’s continued dangerousness. This factor therefore weighs against the court’s ruling.
Weighing all three Gallop factors, we hold that the district court abused its discretion. The second motion to withdraw was untimely, as the district court found. However, the motions do not appear to be a “transparent plot to bring about delay,” and “we have never found [untimeliness] a bar when a substitution claim is otherwise meritorious.” Smith, 640 F.3d at 596 (internal citations omitted). The district court failed to perform an adequate inquiry here, but the record before us nonetheless reveals that the above-discussed conflict resulted in a communications breakdown that prevented Attorney Allen and Blackledge from mounting an adequate defense. As such, the court abused its discretion in denying the motions to withdraw.
C.
A district court’s abuse of discretion in denying a motion to substitute counsel is subject to harmless error review. Horton, 693 F.3d at 467. Although Horton does not explicitly prescribe how to proceed with this harmlessness analysis, we cited a Seventh Circuit case holding that a court’s error in denying a motion for new counsel was harmless because the defendant had not shown that his counsel was constitutionally ineffective under the Sixth Amendment. Id. (citing United States v. Wilks, 46 F.3d 640, 644 (7th Cir.1995)). Blackledge acknowledges that he does not have a right to effective assistance of counsel under the Sixth Amendment, and we need not and do not decide here whether he has an analogous right under the Due Process Clause. However, even if we were to consider whether the *198 court’s error was harmless in light of our cases applying the Sixth Amendment right to effective assistance of counsel, it is evident that Blackledge was harmed by being forced to proceed with Attorney Allen as his counsel.
In Horton, we assumed without deciding that the district court abused its discretion since the court’s failure to conduct any inquiry left us with an incomplete record upon which to determine the extent of the communications breakdown and whether it prevented an adequate defense. 693 F.3d at 467. Still, we found that the error was harmless, noting that the defendant had not identified “any specific way in which his defense was hampered by any lack of communication with his counsel,” and, indeed Horton later indicated that he had an ample opportunity to discuss his case with his lawyer, had done so, and was fully satisfied with his representation. 693 F.3d at 467. In Blackledge’s case, however, his representation was undoubtedly hampered by his lack of communication with Attorney Allen since it prevented them from preparing for trial or discussing whether he would testify,[6] and neither Blackledge nor Attorney Allen indicated that their communications had improved. The fact that Attorney Allen cross-examined the Government’s witnesses and moved for a directed verdict does not by itself mean that she was fulfilling her obligations as counsel, especially in light of her own vigorous claims that she would have great difficulty zealously representing Black-ledge. See Smith, 640 F.3d at 589 (“Where a defendant’s communication with an appointed attorney has so frayed that a court determines the mounting of an adequate defense to be impossible, the defendant is neither ‘be[ing] heard by counsel’ nor receiving ‘the Assistance of Counsel for his defence.’ ”) (alteration in original).
Further, we rejected the argument that the denial of a motion to substitute counsel was harmless in Jennette, where defense counsel failed to go over the PSR with his client prior to the sentencing hearing, despite the fact that the court actually reviewed the PSR with the defendant in open court. 387 Fed.Appx. at 307-08. “Although laudable,” we noted that “going over the PSR with the district judge in open court can hardly be said to substitute for a private, attorney-client-privileged conversation with counsel before sentencing even begins.” Id. at 308. Even if such an action could have rendered the court’s abuse of discretion harmless in Jennette, there was no such attempt to cure the deficiencies in Blackledge’s representation caused by the breakdown in communications, nor could there have been here other than to allow conflict-free counsel to take Attorney Allen’s place.[7]
In total, in proceedings that could result in lifelong incarceration for a person who has already served his full sentence, Black-ledge was forced to be represented by a *199 lawyer asserting multiple conflicts of interest with whom he had not prepared for trial because of their inability to communicate. We cannot conclude that the court’s abuse of discretion in requiring Attorney Allen to continue as counsel was harmless. We therefore vacate the court’s judgment as to the motions to withdraw and remand for the court to reconsider these motions after engaging in the appropriate inquiry regarding the extent of Attorney Allen’s conflicts.
IV.
For the foregoing reasons, we vacate the district court’s judgment denying the motions to withdraw and remand for further proceedings consistent with this opinion. In light of this ruling, we need not consider at this time Blackledge’s remaining arguments regarding the motions to reopen and extend discovery and to appoint Dr. Plaud.

VACATED AND REMANDED

. The following pertinent factual findings are not disputed except as otherwise noted, and to the extent that there is a dispute, we construe the evidence in the light most favorable to the Government as the prevailing party before the district court. See United States v. Antone, 742 F.3d 151, 155 n. 1 (4th Cir.2014).

. "At a hearing ordered pursuant to [the Adam Walsh Act] the person whose mental condition is the subject of the hearing shall be represented by counsel and, if he is financially unable to obtain adequate representation, counsel shall be appointed for him pursuant to section 3006A.” 18 U.S.C. § 4247(d).

. The second co-counsel, attorney Katherine Shea, withdrew as co-counsel on July 24, 2012.

. Despite Attorney Allen's assertion that she and Blaekledge could no longer effectively discuss his case, the dissent infers that they were indeed able to communicate from the fact that she filed proposed findings of fact and conclusions of law on July 26, 2012. However, the fact that Attorney Allen filed this pleading on Blackledge’s behalf does not establish that they were actually able to communicate at this time, and indeed, such an inference is undermined by the fact that she filed the second motion to withdraw only four days later. Had the district court followed the "best practice" of making "an express finding on the record about the state of communication between defendant and counsel,” Smith, 640 F.3d at 594, then perhaps this Court would not be left wondering when Attorney Allen and Blaekledge had last meaningfully communicated about his defense.

. As our dissenting colleague points out, the magistrate judge asked Blackledge whether his dissatisfaction was largely because of the court's rulings denying Dr. Plaud's appointment, to which Blackledge replied that he had been "laboring under the assumption” that Attorney Allen was in the process of obtaining an expert until he learned that the request was "precluded by the Court.” J.A. 107. Although the dissent cites this exchange in order to suggest that Blackledge's conflict with his lawyer was really only a grievance with the court’s rulings, Blackledge’s response actually demonstrates that Attorney Allen had failed to effectively communicate with him regarding her efforts to have Dr. Plaud appointed, thereby leaving him with the false assumption that the process was underway.

. The dissent questions that Blackledge could have had any relevant testimony to offer on the ground that "resolution of th[e] [volitional impairment] element depended on expert testimony, not on Blackledge’s testimony." Dissenting Op., at 213 (emphasis in original). However, as we have recently explained, a respondent’s own testimony and the testimony of those who have had sustained contact with him during his incarceration may indeed be significant to the evaluation of this element. See Antone, 742 F.3d at 165-66. Further, in making this predictive judgment about Blackledge’s ability to control his urges, the district court evidently did not find his testimony to be as irrelevant as the dissent supposes since it received his deposition testimony into evidence. J.A. 166.

. Notably, while Attorney Allen had co-counsel, Attorney Allen was the lead attorney and she alone represented Blackledge at the trial on his commitment.