**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 08-5207**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PAUL OSUJI,

Defendant - Appellant.

_____

**No. 08-5209**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TAMARA VARNADO,

Defendant - Appellant.

_____

Appeals from the United States District Court for the Western
District of North Carolina, at Charlotte.  Lacy H. Thornburg,
District Judge.  (3:06-cr-00415-LHT-1; 3:06-cr-00415-LHT-2)

_____

Argued:  September 21, 2010          Decided:  January 21, 2011

_____

Before WYNN, Circuit Judge, HAMILTON, Senior Circuit Judge, and
Mark S. DAVIS, United States District Judge for the Eastern
District of Virginia, sitting by designation.

Affirmed in part, vacated in part, and remanded with instructions by unpublished opinion. Judge Wynn wrote the opinion, in which Senior Judge Hamilton and Judge Davis concurred.

---

**ARGUED:** Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina; Matthew McGavock Robinson, ROBINSON & BRANDT, PSC, Covington, Kentucky, for Appellants. Melissa Louise Rikard, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Claire J. Rauscher, Executive Director, Kevin A. Tate, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant Tamara Varnado. Edward R. Ryan, United States Attorney, Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

A federal jury convicted Paul Osuji and Tamara Varnado ("Defendants") of one count of conspiracy to defraud a health care benefit program in violation of 18 U.S.C. §§ 1347 & 1349; nine counts of aiding and abetting health care fraud in violation of 18 U.S.C. §§ 2 & 1347; one count of conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) & 1956(h); and seven counts of aiding and abetting money laundering in violation of 18 U.S.C. §§ 2 & 1956(a)(1)(A)(i). Defendants appeal their convictions and sentences. We conclude that the district court did not err by refusing to appoint Osuji new counsel shortly before the trial of this complex case, allowing the government to call a witness who asserted her Fifth Amendment privilege before the jury, or instructing the jury using the words "statute violated." Further, the jury had substantial evidence to support its health care fraud and money laundering verdicts. However, we hold that the district court erred in refusing to instruct the jury on venue, and that proof of venue is insufficient regarding several of Varnado's money laundering convictions. The district court also erred in applying an incorrect base level when calculating Defendants' sentences. We therefore affirm in part, vacate in part, and remand.

I.

This case arises from an alleged fraudulent scheme to obtain Medicare reimbursements for motorized wheelchairs. [U.S.Br.4] Defendant Paul Osuji owned and operated Chimatex, a Medicare-authorized durable medical equipment ("DME") supplier in North Carolina. Defendant Tamara Varnado owned Medisource 2000, a Texas delivery company for Chimatex's DME. Defendants worked with Prince Yellowe, an unindicted co-conspirator who pled guilty to health care fraud in Texas. Defendants also worked with Dr. Linda Morgan, another unindicted co-conspirator who signed fraudulent Certificates of Medical Necessity ("CMN"s) in exchange for cash. The government alleged that Defendants fraudulently claimed approximately $2.5 million for wheelchair reimbursements, and that Medicare paid approximately $1.3 million.

At trial, Yellowe testified against Defendants and explained how the scheme operated. Recruiters, or "runners," found beneficiaries and collected information including their Medicare numbers. The runners provided the information to either First Choice Billing, Yellowe's company, or Medisource. First Choice and Medisource were operated from the same location and were, for practical purposes, interchangeable. First Choice and Medisource submitted motorized wheelchair claims to Medicare using First Choice's billing number and Chimatex's supplier

4

number. When claims were approved, Medicare mailed reimbursement checks to Chimatex in Charlotte, North Carolina. Chimatex then remitted money to Medisource under a profit sharing agreement. Medisource followed up with paperwork, including obtaining CMNs with Morgan's signature. Medisource then purchased scooters—not motorized wheelchairs, which cost substantially more—from a DME wholesale supplier in Houston, Texas and delivered the scooters to the beneficiaries.

The government subpoenaed Morgan to testify against Defendants. On the third day of trial, Morgan's lawyer told the district court that Morgan would assert her Fifth Amendment right not to testify. The judge said that when Morgan was called, he would excuse the jury to explain her rights to her. When Morgan was called the next day, however, the judge did not excuse the jury. Morgan stated her name, and then the judge asked her whether she intended to assert her Fifth Amendment privilege. Morgan said she would. The judge excused her and directed the government to call its next witness. At Osuji's request, the district court instructed the jury not to draw any inferences from Morgan's invocation of her privilege.

At the close of the government's evidence and again at the close of trial, Defendants moved for a judgment of acquittal. The district court denied those motions. The district court also denied Varnado's request for an instruction on venue. The

5

district court then instructed the jury, after which Varnado objected to the wording of headings on several pages of the instructions. The headings included the caption "statute violated" instead of the caption Varnado preferred, "statute charged." The court noted the objection but concluded that it was unlikely that the jury would be misled by the captions.

On January 15, 2008, the jury returned guilty verdicts on all counts against both Defendants. The district court sentenced Osuji to 211 months' imprisonment followed by three years of supervised release, and ordered Osuji to pay $1,208,256.53 in restitution. The district court sentenced Varnado to 63 months' imprisonment followed by three years of supervised release, and ordered Varnado to pay $1,208,256.53 in restitution. Defendants appealed both their convictions and sentences.

II.

We first address Osuji's argument that the district court erred in failing to grant him new counsel. He argues that he timely requested new counsel and that communication with his attorney had completely broken down. We discern no error in the district court's refusal to grant Osuji new counsel.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused

6

shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant's right to have a lawyer of his own choosing is an essential element of the Sixth Amendment right to assistance of counsel. United States v. Gallop, 838 F.2d 105, 107 (4th Cir. 1988). A defendant's right to choose a lawyer is, however, not absolute. United States v. Mullen, 32 F.3d 891, 895 (4th Cir. 1994). Rather, "[s]uch right must not obstruct orderly judicial procedure and deprive courts of the exercise of their inherent power to control the administration of justice." Gallop, 838 F.2d at 108. Further, an indigent defendant must show good cause for a new appointed lawyer. Id.

We review the district court's determination of whether a defendant's motion for substitution of counsel should be granted under the abuse of discretion standard. Mullen, 32 F.3d at 895. In evaluating whether the court abused its discretion in denying a defendant's motion for substitution of counsel, this Court considers three factors: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the attorney and the client was so great that it "resulted in total lack of communication preventing an adequate defense." Id.

Regarding the timeliness of Osuji's motion, the record shows that a magistrate judge conducted a hearing and properly

7

concluded that Osuji's pre-trial motion for substitution of counsel was untimely. The case was over a year old, and the motion was made about a month before trial was set to begin. We agree with the determination that Osuji's motion for new counsel was untimely. See, e.g., Gallop, 838 F.2d 105 (affirming denial of motion for substitution of counsel made five days before trial); United States v. Williams, 176 F.3d 301 (6th Cir. 1999) (affirming denial of motion for substitution of counsel made two weeks before trial in complex multidefendant conspiracy case).[1]

Regarding the adequacy of the district court's inquiry, Osuji does not argue that the extensive pretrial inquiry into his substitution motion was insufficient. Rather, he contends that the district court failed to inquire adequately when the issue was again raised at trial. Osuji did not, however, make a second motion to substitute counsel. Rather, Osuji's counsel simply informed the court that Osuji wished to address the issue at the appropriate time. But neither Osuji nor the district court ever followed up. Under these circumstances, the district court did not abuse its discretion when it did not conduct a second inquiry.

---

[1] Osuji does not argue that a mid-trial motion for substitution, had one been made, would have been timely.

Finally, regarding whether the conflict between Osuji and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense, the record does not support Osuji's claim that communication between himself and his attorney completely broke down. The record instead shows that Osuji's counsel cross-examined every government witness, argued numerous objections and motions, and conducted an appropriate direct examination of Osuji when he testified in his own defense. Under these circumstances, the district court did not abuse its discretion in denying Osuji's motion to substitute counsel. See United States v. Hanley, 974 F.2d 14, 17 (4th Cir. 1992) (holding counsel's vigorous defense at trial indicated a lack of complete communication breakdown).

## III.

We next address both Defendants' argument that the jury lacked sufficient evidence to convict them of health care fraud, conspiracy to commit health care fraud, money laundering, and conspiracy to commit money laundering. Defendants contend that the government failed to show that they intended to commit fraud or that they knew that the money they received came from an illegal source. We disagree.

"A jury's verdict must be upheld on appeal if there is substantial evidence in the record to support it." United

9

States v. Foster, 507 F.3d 233, 244 (4th Cir. 2007).  In determining whether the evidence is substantial, we must view the evidence in the light most favorable to the government and ensure that there is sufficient evidence to allow a reasonable fact finder to conclude that the defendant is guilty beyond a reasonable doubt.  Id.  The uncorroborated testimony of an accomplice can alone sustain a conviction.  United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir. 1997).  And we assume that the jury resolved all contradicting evidence in the government's favor.  Foster, 507 F.3d at 245.

Defendants first challenge the sufficiency of the evidence regarding aiding and abetting health care fraud and conspiracy to commit health care fraud.  A person commits health care fraud when he:

> knowingly and willfully executes, or attempts to execute, a scheme or artifice-- (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program . . . .

18 U.S.C. § 1347.  Whoever aids and abets in the commission of health care fraud is punishable as a principal.  18 U.S.C. § 2.  "A defendant is guilty of aiding and abetting if he has 'knowingly associated himself with and participated in the criminal venture.'"  United States v. Burgos, 94 F.3d 849, 873 (4th Cir. 1996) (quoting United States v. Winstead, 708 F.2d

10

925, 927 (4th Cir. 1983)).  To prove association, the government must establish that the defendant was "cognizant of the principal's criminal intent and the lawlessness of his activity."  Id.

The elements of a conspiracy offense are: "an agreement among the defendants to do something which the law prohibits; knowing and willing participation by the defendants in the agreement; and an overt act by the defendants in furtherance" of the agreement's purpose.  United States v. Hedgepeth, 418 F.3d 411, 420 (4th Cir. 2005) (internal quotation marks and citation omitted).  A conspiracy need not be proven by direct evidence; it may be inferred from the facts and circumstances of the case. United States v. Laughman, 618 F.2d 1067, 1074 (4th Cir. 1980).

In this case, Osuji contends that the government presented no evidence that he knew of Yellowe's fraud or that he entered into any agreement with the intent to commit fraud.  At trial, however, Yellowe testified that he and Osuji had an agreement and that Osuji knew not only that a fraud was being conducted but how it was being conducted:

> Q. Let's talk about everyone's role now in the scheme. Mr. Osuji, what role did he play?
>
> A. He was a partner, I mean, based on all I have said. You know, we had a profit sharing.  As the evidence that was admitted from his office states, that we have an understanding to get this patient information, share the profit 50/50 after cost.

11

. . . .

Q. But based on your conversation with him, he was certainly aware of how the fraud was conducted?

A. Correct. He was aware of everything we did, yes.

Taken in the light most favorable to the government, this evidence is sufficient to show that Osuji knew of Yellowe's fraud and entered into an agreement with the intent to commit fraud. See United States v. Baker, 985 F.2d 1248 (4th Cir. 1993) (affirming a conspiracy conviction based on an accomplice's testimony).

Likewise, Varnado argues that the government presented no evidence that she acted with knowledge that Yellowe was defrauding Medicare. But at trial, Yellowe testified that Varnado knew exactly how the scheme worked:

Q. Did [Varnado] understand how your business operated? Did you communicate that to her?

A. Yes. . . .

. . . .

Q. And you also had communicated to her that there was profit potential involved in this particular type of business where you bill for the [motorized wheelchair] regardless of what's provided?

A. She actually knew exactly how I run my operation, yes.

Q. Is that because you had discussed that with her?

A. Yes.

12

Varnado asserts that, while she may have known of Yellowe's previous fraud, there was no evidence that she knew the new business would be run fraudulently. Yellowe testified, however, that he discussed with Varnado the possibility of continuing the fraud by setting up another supplier. Yellowe stated that Varnado had agreed to "put the next fraudulent entity in her name." Yellowe also told Varnado that he was probably going to jail. Taken in the light most favorable to the government, this evidence is sufficient to show that Varnado knew that Yellowe was defrauding Medicare.

Finally, both Defendants challenge the sufficiency of the evidence regarding money laundering and conspiracy to commit the same. A person commits promotion money laundering when he:

> knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity . . . .

18 U.S.C. § 1956 (a)(1)(A)(i). For the jury to convict on the money laundering conspiracy charge, "the prosecution was obliged to prove that (1) a conspiracy to commit promotion money laundering was in existence, and (2) that during the conspiracy, the defendant knew that the proceeds used to further . . . illicit operations had been derived from an illegal activity,

13

and knowingly joined in the conspiracy." United States v. Alerre, 430 F.3d 681, 693-94 (4th Cir. 2005).

Defendants contend that neither Osuji nor Varnado knew that the financial transactions were "anything other than legitimate transactions undertaken in furtherance of a lawful medical equipment business." But the evidence considered above, taken in the light most favorable to the government, shows that both Defendants knowingly participated in a fraudulent scheme and knew that the transactions furthered that scheme. See Alerre, 430 F.3d at 695 (affirming conviction based on testimony of a co-conspirator).

IV.

Defendants next argue that the district court erred by allowing the government to call an unindicted co-conspirator to the stand to assert her Fifth Amendment privilege before the jury. We disagree.

When a government witness invokes a testimonial privilege, it may constitute reversible error under two circumstances. The first is "'when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege.'" United States v. Johnson, 587 F.3d 625, 631 (4th Cir. 2009) (quoting Namet v. United States, 373 U.S. 179, 186-87 (1963)), cert. denied sub nom. Martin v. United

14

States, 130 S. Ct. 2128 (2010).  The second is when "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant."  Id.  "And even when the objectionable inferences might have been found prejudicial, it has been held that instructions to the jury to disregard them sufficiently cured the error."  Namet, 373 U.S. at 187.

In this case, Defendants argue that the inferences that the jury could have drawn from Morgan's invocation of her Fifth Amendment privilege added critical weight to the prosecution's case.  Specifically, Defendants argue that Morgan's invocation of her right not to testify corroborated Yellowe's accusation that Morgan received money and blank prescriptions.  Defendants overlook the fact that other testimony at trial established Morgan's complicity.  Indeed, a witness from Medicare testified that Morgan was listed as the referring physician on the fraudulent claims.  While Morgan's testimony could have damaged Varnado's assertions of innocence, it is hard to imagine how her refusal to testify substantiated Yellowe's accusations.  Thus, any potential inferences from Morgan's assertion of her Fifth Amendment privilege did not add critical weight to the government's case.  Moreover, at Osuji's request, the district court instructed the jury not to draw any inferences from Morgan's invocation of her Fifth Amendment privilege.  We

15

presume that the jury followed that instruction (<u>Johnson</u>, 587 F.3d at 631) and hold that the instruction sufficiently cured any potential error in allowing Morgan to invoke her privilege before the jury.

V.

Defendants next argue that the district court erred in refusing to give Varnado's requested instruction on venue.

Proper venue in a criminal case is a constitutional right secured by Article III, Section 2 and by the Sixth Amendment of the United States Constitution.[2] <u>United States v. Bowens</u>, 224 F.3d 302, 308 (4th Cir. 2000) (citing U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed.") and U.S. Const. amend. VI (providing a criminal defendant with the right to a trial "by an impartial jury of the State and district wherein the crime shall have been committed")); <u>see also</u> Fed. R. Crim. P. 18 ("Except as otherwise permitted by statute or these rules, the prosecution shall be had in a district in which the

---

[2] "Strictly speaking the former constitutional provision is a venue provision, since it fixes the place of trial, while the latter is a vicinage provision, since it deals with the place from which the jurors are to be selected." 2 Charles Alan Wright & Peter J. Henning, <u>Federal Practice and Procedure</u> § 301 (4th ed. 2009).

16

offense was committed."). When a defendant is charged with more than one count, venue must be proper on each count. Bowens, 224 F.3d at 308. The government must prove venue by a preponderance of the evidence. Id.

We addressed the question of when venue is properly "in issue" so as to raise a question of fact for the jury in United States v. Martinez, 901 F.2d 374, 376 (4th Cir. 1990). In that case, we followed the approach taken by the Eighth Circuit in United States v. Moeckly, 769 F.2d 453, 461 (8th Cir. 1985).[3] We held that venue is in issue when "the jury was able to convict the defendant[s] of the offenses charged without an implicit finding that the acts used to establish venue had been proven." Martinez, 901 F.2d at 376. However, "proof of venue may be so clear that failure to instruct on the issue is not reversible error." Id.

Varnado asserts that her case involves a multi-district conspiracy, with acts alleged to have occurred in Texas, South Carolina, and North Carolina. Varnado notes that five of the seven counts of money laundering are based on transactions that took place entirely in Texas. Varnado contends that it is impossible to determine from the instructions and verdict here

---

[3] In fact, the Fourth Circuit followed a similar approach before adopting Moeckly in United States v. Griley, 814 F.2d 967, 974 (4th Cir. 1987).

17

whether the jury found that any part of her alleged offenses took place in the Western District of North Carolina.

Under 18 U.S.C. § 1956(i), venue for money laundering is proper in:

(A) any district in which the financial or monetary transaction is conducted; or

(B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.

18 U.S.C. § 1956(i).

Here, the district court instructed the jury on the money laundering charges without mentioning the location of the alleged transactions. Indeed, the district court's only allusion to venue was a passing reference to "the time and place described in the indictment." The indictment alleged that Defendants engaged in promotion money laundering "within the Western District of North Carolina and the Southern District of Texas, Houston Division."

Given the district court's instructions, the jury could have found Varnado guilty of money laundering without finding that she "participated in the transfer of the proceeds of the specified unlawful activity from [the Western District of North Carolina] to the district where the financial or monetary transaction [was] conducted." 18 U.S.C. § 1956 (i). In other

18

words, the jury was able to convict Varnado of the offenses charged "without an implicit finding that the acts used to establish venue had been proven." Martinez, 901 F.2d at 376. The district court therefore erred in not instructing the jury on venue. To determine whether the error was harmless, we must evaluate the government's proof of each money laundering count against Varnado.

Count fourteen alleges a wire transfer from Osuji to Medisource "as payment towards Defendants' profit sharing agreement." Count seventeen alleges that Osuji purchased a Cashiers check made payable to Medisource as payment toward Defendants' profit sharing agreement. Regarding these counts, the evidence offered at trial supports a finding of venue in the Western District of North Carolina. In describing the operation of the scheme, Yellowe testified that Varnado was responsible for billing Medicare using First Choice's billing number and Chimatex's supplier number. Once Medicare sent the reimbursement to Osuji in Charlotte, North Carolina, Osuji would remit part of the profit to Medisource's account, over which Varnado held sole signatory authority. Varnado then completed the paperwork necessary to substantiate the claims. Because this evidence showed that Varnado "participated in the transfer of the proceeds" on counts fourteen and seventeen (18 U.S.C.

§ 1956(i)), the district court's failure to instruct on venue was not reversible error.

Regarding the remaining counts of money laundering, however, the evidence of venue is not as compelling. All the other money laundering counts describe transactions that took place in Texas, including Varnado's purchasing a Cashiers check payable to a DME supply company, depositing and cashing personal checks, and issuing a check for delivery of DME. The government showed that Varnado <u>handled</u> money in Texas but did not prove that Varnado <u>transferred</u> any funds relating to those counts. And evidence of handling money only in Texas alone is insufficient to support a finding of venue in the Western District of North Carolina. <u>See</u> <u>United States v. Cabrales</u>, 524 U.S. 1, 8 (1998) (rejecting argument that venue is appropriate for money laundering without evidence of transportation of funds); <u>United States v. Stewart</u>, 256 F.3d 231, 240 (4th Cir. 2001) (deeming evidence insufficient to establish venue for money laundering in Virginia where defendant "handled money only in California and was not responsible for or charged with the transportation of the money from Virginia to California"). The error in not instructing on venue was not harmless with regard to these counts. We therefore must vacate Varnado's conviction on counts twelve, thirteen, fifteen, sixteen, and eighteen.

20

VI.

We turn next to Defendants' argument that the district court erred in giving the jury instructions that read "statute violated." Defendants assert that this instruction impermissibly directed the jury to return a guilty verdict. We disagree.

A trial court may not direct the jury to find a defendant guilty. United States v. Martin Linen Supply Co., 430 U.S. 564, 572-73 (1977). "In reviewing jury instructions, we 'accord the district court much discretion and will not reverse provided that the instructions, taken as a whole, adequately state the controlling law.'" United States v. Wills, 346 F.3d 476, 492 (4th Cir. 2003) (quoting Teague v. Bakker, 35 F.3d 978, 985 (4th Cir. 1994)).

In this case, the district court read the instructions to the jury and provided the jurors with a written copy of the instructions. Although the district court did not read this portion of the instructions to the jury, the copy provided entitled the instructions on each alleged offense "statute violated." While including in the written instructions' heading the language "statute violated" may have been suggestive, it did not direct a guilty verdict. On the contrary, the district court properly instructed the jury that the government bore the burden of proving guilt beyond a reasonable doubt. The district

21

court's instructions, taken as a whole, adequately stated the controlling law, and Defendants are not entitled to reversal on this basis. See Hanley, 974 F.2d at 17-18 (affirming defendant's conviction where jury instructions on burden of proof were, taken as a whole, correct despite judge's having told jury to find defendant guilty if it found that reasonable doubt existed).

VII.

Finally, we turn to Defendants' argument that the district court plainly erred by incorrectly calculating their offense levels under the Sentencing Guidelines. The government concedes that the district court erred in calculating Defendants' base offense level, but contends that Defendants have not shown that the error affected their substantial rights.

"In reviewing any sentence, 'whether inside, just outside, or significantly outside the Guidelines range,' we apply a 'deferential abuse-of-discretion standard.'" United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009) (quoting Gall v. United States, 552 U.S. 38, 40 (2007)). We first consider whether the district court committed any significant procedural error, such as improperly calculating the guidelines range. United States v. Evans, 526 F.3d 155, 161 (4th Cir. 2008), cert. denied, 129 S.Ct. 476 (2008). And when a party has failed to

22

preserve his challenge to procedural sentencing errors, we review for plain error only. United States v. Lynn, 592 F.3d 572, 576-77 (4th Cir. 2010). To establish plain error, an appellant must show that an error (1) was made, (2) is clear, and (3) affects a substantial right. United States v. Massenburg, 564 F.3d 337, 342-43 (4th Cir. 2009). "Even if an appellant makes this three-part showing, an appellate court may exercise its discretion to correct the error only if it 'seriously affects the fairness, integrity or reputation of judicial proceedings.'" Lynn, 592 F.3d at 577 (quoting Massenburg, 564 F.3d at 343).

Here, the jury convicted Defendants of money laundering in violation of 18 U.S.C. § 1956, which is sentenced under United States Sentencing Guideline ("U.S.S.G.") § 2S1.1. That provision of the Sentencing Guidelines says that the base offense level shall be the offense level for the underlying offense from which the laundered funds were derived (subject to conditions not contested here). U.S.S.G. 2S1.1(a)(1). The underlying offense was health care fraud in violation of 18 U.S.C. § 1347, which is sentenced under U.S.S.G. § 2B1.1. That provision provides for a base offense level of seven "if (A) the defendant was convicted of an offense referenced to this guideline, and (B) that offense of conviction has a statutory maximum term of imprisonment of 20 years or more[.]" U.S.S.G.

23

§ 2B1.1(a)(1).    Otherwise  the  base  offense  level  is  six.
U.S.S.G. § 2B1.1(a)(2).

As the probation officer noted in Defendants' pre-sentence reports, the violations of 18 U.S.C. § 1347 subjected Defendants to a maximum term of ten years' imprisonment.  Only the money laundering convictions carried a twenty-year statutory maximum. But the money laundering offense was not "referenced to this guideline" under U.S.S.G. § 2B1.1(a)(1).[4]    Therefore, under U.S.S.G. § 2B1.1(a), the correct base offense level was six, not seven, which the district court used here.

The government concedes that the district court should have used a base offense level of six instead of seven.  Regarding Osuji, the government recognizes that his 211-month sentence was one month outside the applicable guideline range.  The government nevertheless contends that Osuji has not shown prejudicial error.  We disagree and conclude that the district court plainly erred in failing properly to calculate Osuji's base offense level and that the error affected Osuji's substantial rights.  See United States v. Godwin, 253 F.3d 784,

---

[4] An offense is "referenced to this guideline" if "this guideline is the applicable Chapter Two guideline determined under the provisions of § 1B1.2 (Applicable Guidelines) for the offense of conviction[.]"   U.S.S.G. § 2B1.1 Application Note 2(A).  Money laundering in violation of 18 U.S.C. § 1956 is not referenced to § 2B1.1.  See U.S.S.G. Appendix A.

789 (4th Cir. 2001) (holding that resentencing was required where the district court used an incorrect, higher base level). Because the district court must resentence Osuji, we need not reach Osuji's other arguments about his sentence. See United States v. Llamas, 599 F.3d 381, 387 n.6 (4th Cir. 2010) (not reaching defendant's alternative sentencing arguments).

Regarding Varnado, the record shows that her 63-month sentence falls within the properly calculated guideline range. We are persuaded, however, that Varnado is also entitled to resentencing. In Gall, 552 U.S. at 40, the Supreme Court explained that a district court must begin the sentencing process by correctly calculating the appropriate guidelines range. The error in this case therefore appears to be plain.

Regarding whether the error affected Varnado's substantial rights, we are cognizant of the fact that the district court granted Varnado a variance/departure and sentenced Varnado to the low end of the improperly calculated guideline range (within a window of 63 to 78 months). It is reasonable to presume that the district court might have imposed a lower sentence had it been aware of the correct guidelines range. We therefore hold that Varnado is entitled to resentencing. See United States v. McCrary, 887 F.2d 485, 489 (4th Cir. 1989) (holding that defendant should be resentenced where district court imposed a sentence under an erroneously calculated guidelines range—even

25

where the sentence imposed fell within the correct range). Because the district court must resentence Varnado, we need not reach her other arguments about her sentence.[5] Llamas, 599 F.3d at 387 n.6.

VIII.

In conclusion, we affirm Osuji's conviction. We affirm Varnado's conviction except as to counts twelve, thirteen, fifteen, sixteen, and eighteen. We vacate her conviction on those counts because the district court erred in refusing to instruct the jury on venue and the error was not harmless. We also vacate both Defendants' sentences because the district court erred in applying an incorrect base level when calculating the sentences. We remand the case to the district court for resentencing under the correctly calculated guidelines range.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS

---

[5] Varnado argues, for example, that the district court erred in applying an enhancement pursuant to section 3B1.1 for being an organizer, leader, manager or supervisor of the money laundering offense. See U.S.S.G. § 3B1.1. We are concerned that there may have been insufficient evidence to support this enhancement. We reserve ruling on the matter, however, in order to give the parties and the district court the opportunity to reexamine the issue at resentencing.