**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4304**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SHAHID HASSAN MUSLIM, a/k/a Sharp, a/k/a Sean Williams,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., District Judge. (3:13-cr-00307-RJC-DCK-1)

Argued: September 20, 2019                    Decided: November 25, 2019

Before WILKINSON, WYNN, and RICHARDSON, Circuit Judges.

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Judge Wilkinson and Judge Richardson joined.

**ARGUED:** Kimberly Harvey Albro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

WYNN, Circuit Judge:

Defendant Shahid Hassan Muslim appeals decisions of the U.S. District Court of Western North Carolina related to his trial, conviction, and sentence. Defendant raises eight grounds on appeal: (1) the district court erred in denying his motion to continue trial; (2) the court erred in conducting a morning session of trial in Defendant's absence; (3) the court erred in admitting expert testimony without undertaking analysis under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); (4) the court erred in denying Defendant's right to testify at his trial; (5) the court erred in instructing the jury on a count; (6) the court erred in denying a post-trial motion to withdraw as counsel; (7) the court erred in applying four sentencing enhancements; and (8) there was a complete miscarriage of justice.

We affirm the district court on all issues.

I

Defendant operated a prostitution ring between at least 2010 and continuing through November 2013, when he was arrested. He was indicted on ten counts. The charges included kidnapping, sex trafficking, and sexual exploitation of a child. After a week-long trial, a jury found him guilty on all ten counts. The court sentenced Defendant to three terms of life imprisonment, as well as seven shorter terms, all to be served concurrently. This appeal followed, raising numerous challenges.

II

A

2

Defendant first argues that the district court wrongly denied a motion to continue his trial. "We review the denial of a motion for a continuance for abuse of discretion." *United States v. Copeland*, 707 F.3d 522, 531 (4th Cir. 2013). A district court abuses its discretion "when its denial of a motion for continuance is 'an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay.'" *Id.* (quoting *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)). "[E]ven if such an abuse [of discretion] is found, the defendant must show that the error specifically prejudiced h[is] case in order to prevail." *Id.* (alterations in original) (quoting *United States v. Williams*, 455 F.3d 724, 739 (4th Cir. 2006)).

Here, Defendant's motion to continue—the fourth such motion—came two days before the start of trial, which was scheduled for August 5, 2014. The district court denied the motion, stating, "This case was peremptorily set. It has been on the docket for a long time. I'm not inclined to continue this case." J.A. 105. Indeed, the previous motion to continue, which the parties had filed jointly over two months prior, had specified a trial date of August 5, 2014. Dist. Ct. ECF No. 33. Laying out the reasons to continue, that joint motion had stated, among other things, that the case was complex, that there was a great deal of discovery, that the parties expected the trial to last over a week, and that the Government would be bringing witnesses from Washington, D.C., Florida, Texas, and California. At that time, defense counsel had needed more time to locate experts, research legal issues, and conduct plea negotiations.

Defendant's motion on appeal repeated arguments from the previous motion. The case was complex and had voluminous discovery. Counsel again needed more time to

3

locate experts, research legal issues, and conduct plea negotiations. *Compare* Dist. Ct. ECF No. 33 ¶ 14 *with* Dist. Ct. ECF No. 56 ¶ 15. Counsel also cited "unexpected time drains" with other clients over the preceding two weeks. J.A. 89. However, counsel did not explain why the "unexpected time drains" and the additional discovery interfered with the preceding months of preparations. Nor did he identify any expert witness he proposed to locate, much less show he could obtain their attendance if the continuance were granted. *See United States v. Clinger*, 681 F.2d 221, 223 (4th Cir. 1982) (listing elements a party usually must prove when seeking a continuance to secure the attendance of a witness). Nor did he address why he failed to file the motion at an earlier date. *See United States v. LaRouche*, 896 F.2d 815, 824 (4th Cir. 1990) ("The later that a motion for a continuance is made, the more likely it is made for dilatory tactics; hence, it is less likely that the district court arbitrarily denied the continuance.").

We hold that the trial court was within its discretion to deny the motion to continue. And because there was not an abuse of discretion, we will not discuss the question of prejudice.

B

Defendant's next challenge concerns his absence at a single morning session of his week-long trial. We review a district court's decision to "proceed with a trial when the defendant is absent" for abuse of discretion, and the "district court's factual findings will not be disturbed unless clearly erroneous." *United States v. Camacho*, 955 F.2d 950, 953 (4th Cir. 1992). Violations stemming from a defendant's absence from the courtroom are

4

subject to a harmless error analysis. *United States v. Harris*, 814 F.2d 155, 157 (4th Cir. 1987).

The Fifth Amendment "guarantees a defendant the right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings, while Rule 43 [of the Federal Rules of Criminal Procedure] enshrines an even broader right to be present." *United States v. Runyon*, 707 F.3d 475, 517 (4th Cir. 2013) (citation and internal quotation marks omitted). However, a defendant may waive his right to be present if he is voluntarily absent "without compelling justification" after the trial begins. *United States v. Rogers*, 853 F.2d 249, 252 (4th Cir. 1988). The right "cannot cursorily, and without inquiry, be deemed by the trial court to have been waived simply because the accused is not present when he should have been." *Id.* (quoting *United States v. Beltran-Nunez*, 716 F.2d 287, 291 (5th Cir. 1983)). And, the court should make efforts to ascertain the defendant's location and reason for absence, as well as the "likelihood the trial could soon proceed with the defendant, the difficulty of rescheduling and the burden on the government." *Id.*

Trial began as scheduled on August 5 and Defendant was present for the entirety of the first two days. On the third day of trial, however, at the start of the morning session, Defendant was absent. The district court was advised that, early that morning, Defendant reported experiencing "some type of seizure activity." J.A. 660. Medical staff at the jail examined him, noted he had no seizure history and appeared to have no seizure activity, and suggested he was malingering. After the medical staff evaluated Defendant, he was taken to the courthouse, where, according to the marshal, he lay on the floor passively refusing to come to court. Defendant's counsel went to him to explain the court intended

5

to rule he was waiving his right to be present. Upon returning, counsel indicated that Defendant seemed to have made a slight head movement in response to counsel's attempt to communicate. The court then made a finding that Defendant was voluntarily absenting himself from the proceedings. Even after that announcement, the district court judge used an audio-video connection set up in Defendant's cell to make a personal attempt to communicate with Defendant. After having spent an hour addressing Defendant's absence, the court finally ended the inquiry and resumed the trial without him physically present. The trial remained available to Defendant in the holding cell via the audio-video connection. In the afternoon, Defendant rejoined the proceedings in the courtroom.

Unlike in cases in which this Court concluded that the district court summarily assumed that the defendant waived his right to be present, the district court here made repeated efforts to ascertain Defendant's status and ensure Defendant's presence. *See Camacho*, 955 F.2d at 954–55 (concluding that the district court abused its discretion in determining that the defendant had voluntarily absented himself from trial where a serious snowstorm made it likely that the defendant was delayed in traffic); *Rogers*, 853 F.2d at 252 (concluding that the district court abused its discretion where it merely "inquired of defense counsel regarding [the defendant's] whereabouts, but did nothing else"). We therefore conclude the district court did not abuse its discretion in proceeding with the trial in Defendant's absence.

C

Defendant also appeals the district court's denial of a motion to exclude the expert testimony of software quality assurance engineer Daniel Magdael. We review a district

6

court's decision to admit expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), for abuse of discretion. *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019). "A district court abuses its discretion if it makes an error of law or clearly erroneous factual finding." *Id.* Such rulings are "entitled to great deference." *NCO Fin. Sys., Inc. v. Montgomery Park, LLC*, 918 F.3d 388, 396 (4th Cir.), *as amended* (Mar. 15, 2019). Where the alleged error was harmless, we may affirm without determining if the district court improperly admitted the testimony. *United States v. Forrest*, 429 F.3d 73, 81 (4th Cir. 2005).

The Supreme Court in *Daubert* required that the trial judge assess two factors to determine whether to admit expert testimony: "(1) whether the testimony is based on 'scientific knowledge' (i.e. knowledge grounded 'in the methods and procedures of science'), and (2) whether the testimony will be helpful to the trier of fact." *Md. Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 784 (4th Cir. 1998) (footnote omitted) (quoting *Daubert*, 509 U.S. at 590); *see also* Fed. R. Evid. 702.

Here, the Government charged Defendant with producing child pornography using materials shipped in interstate or foreign commerce. To support the charge, the Government offered video evidence from a computer seized from Defendant's bedroom. The video showed Defendant having sex with a minor; it was therefore child pornography. Looking for evidence of interstate commerce, FBI Digital Forensics Examiner Lee Weingarten analyzed the video, as well as other videos from the computer. Weingarten determined based on reflections in the other videos that they appeared to have been made with a Flip Video camera. He then determined that the metadata identifying the recording

device for those videos matched the corresponding metadata of the child pornography video. Having independently identified the recording device as a Flip Video camera, Weingarten reached out to Flip Video's parent company to locate an expert who could confirm his conclusion. That expert would be Daniel Magdael, a software quality assurance engineer with experience working with Flip Video cameras. Like Weingarten before him, Magdael determined a Flip Video camera recorded the video at issue. The Government went to these lengths because Flip Video cameras were made in China, and thus could only have arrived in North Carolina via foreign commerce.

The district court's ruling admitting Magdael's testimony was quite brief. However, without passing on whether the ruling fell short of *Daubert*, we may consider whether the proposed error was harmless. Weingarten testified to his independent extraction and comparison of the video metadata, and he testified to the critical link between the child pornography video and the Flip Video camera. Our review of the record shows that Defendant's conviction did not rest on Magdael's expert testimony alone; the jury would have connected the video to the Flip Video camera based on Weingarten's unchallenged testimony in this case. Thus, the alleged error, even if present, was harmless.

D

Defendant also contends he was denied his right to testify. "A defendant's right to testify in his own defense is rooted in the Constitution's Due Process Clause, Compulsory Process Clause, and Fifth Amendment right against self-incrimination." *United States v. Woods*, 710 F.3d 195, 200 (4th Cir. 2013). Given the constitutional nature of this right, courts generally review *de novo* whether a defendant's right to testify on his own behalf

8

was violated at trial. *E.g.*, *United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000). However, because Defendant failed to raise this issue below, we review this issue for plain error. *United States v. Johnson*, 464 F. App'x 112, 114 (4th Cir. 2012) (unpublished) (per curiam) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)) (analyzing under the plain error standard the defendant's argument "that the district court failed to sua sponte inquire into whether Johnson's failure to testify on his own behalf was a knowing, voluntary, and intelligent waiver of his right to do so"). To show plain error, Defendant must show "(1) that the court erred, (2) that the error is clear and obvious, and (3) that the error affected his substantial rights, meaning that it 'affected the outcome of the district court proceedings.'" *United States v. Catone*, 769 F.3d 866, 871 (4th Cir. 2014) (quoting *Olano*, 507 U.S. at 734). Even if Defendant shows plain error, we "retain discretion whether to recognize the error and will deny relief unless the district court's error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 736).

Courts, including this one, have held that "the trial court does not have a *sua sponte* duty to conduct a colloquy with the defendant at trial to determine whether the defendant has knowingly and intelligently waived the right to testify." *Sexton v. French*, 163 F.3d 874, 881 (4th Cir. 1998) (collecting cases). However, a number of courts have also recognized "exceptional, narrowly defined circumstances," *United States v. Rodriguez-Aparicio*, 888 F.3d 189, 194 (5th Cir. 2018) (quoting *United States v. Pennycooke*, 65 F.3d 9, 12 (3d Cir. 1995)), virtually all of which "involve conflicts between the defendant and counsel," where a court does have such a duty, *id.* (collecting cases). An example of such

9

a situation is where there is "some indication that either the defendant actually wants to testify and is being prevented from doing so or that there is a conflict between the defendant and his lawyer on the matter." *United States v. Manjarrez*, 258 F.3d 618, 624 (7th Cir. 2001). Courts have made clear, though, that such a situation is "the exception, not the rule." *Pennycooke*, 65 F.3d at 13. "Where the trial court has no reason to believe that the defendant's own attorney is frustrating his or her desire to testify, a trial court has no affirmative duty to advise the defendant of the right to testify or to obtain an on-the-record waiver of such right." *Id.*

At the close of the Government's evidence, the district court advised Defendant that he had the right to testify. Defendant responded that he understood. The district court asked Defendant whether he wanted to testify, and Defendant said that he wanted to, but that he was not prepared to testify at that moment. The district court informed Defendant that his testimony properly came next in the trial. The district court permitted Defendant to speak with counsel, after which Defendant's counsel stated that he did not intend to put on any evidence at that time. At a subsequent sidebar conference, Defendant's counsel informed the district court that:

> I want to make sure we're clear. The decision to take the stand or not take the stand is totally the defendant's. He would not answer the question one way or the other . . . . He did not ever say no. Then he just said in my ear, "Okay, I want to take the stand."

J.A. 1101-02.

The district court judge adjourned trial for the evening but stated he would consider again if Defendant wished to take the stand the next morning. The next morning, the court

10

asked Defendant's counsel whether he would move to reopen so that Defendant could testify. Defendant's counsel indicated that he would file a motion to reopen. The record shows that the court directed that Defendant take the stand, but then there was a recess, after which Defendant's counsel stated that "the defendant would like to withdraw its [sic] motion to reopen the case and move for a judgment of acquittal at the close of all the evidence." J.A. 1113.

Defendant argues that because Defendant repeatedly indicated that he wanted to testify, the district court erred in failing to inquire into Defendant's desire to testify. Defendant further argues that the district court should have been on notice regarding "on-the-record conflicts" between Defendant and his trial counsel, and therefore should have inquired further with Defendant. Appellant's Br. at 17.

However, the district court did ask Defendant whether he wished to testify. Moreover, although Defendant disagreed with his attorney throughout the trial, there is no evidence in the record that Defendant's attorney prevented Defendant from testifying. Indeed, Defendant's counsel indicated that the decision to testify was solely the Defendant's. Throughout, the district court offered Defendant time to consider his decision—including overnight—as well as opportunities to consult with counsel. Each time Defendant expressed a desire to testify, the court offered him the opportunity, but Defendant declined. There is no indication that the final withdrawal of the motion to reopen occurred without the direction of Defendant. Given the foregoing, we hold that the district court did not clearly err.

E

11

Defendant's next ground of appeal concerns the jury instructions for Count Seven at the close of his trial. Count Seven was for a violation of 18 U.S.C. § 1952(a)(3)(B) in conjunction with 18 U.S.C. § 1952(a)(2), one element of which requires a predicate "crime of violence." Defendant contends that the district court improperly instructed the jury on the predicate offense, which the indictment charged as "physical assault," because the district court did not give the elements of the predicate offense and because the district court instructed that "physical assault" is a "crime of violence."

Generally, we review de novo "whether a district court has properly instructed a jury on the statutory elements of an offense," *United States v. Rahman*, 83 F.3d 89, 92 (4th Cir. 1996), as well as "[w]hether a prior conviction qualifies as a crime of violence," *United States v. Henriquez*, 757 F.3d 144, 147 (4th Cir. 2014). However, where, as here, a defendant does not object below to the district court's jury instructions regarding a specific count, we review for plain error. *United States v. Cowden*, 882 F.3d 464, 475 (4th Cir. 2018). Under this standard, we have discretion to correct a plain error which affects substantial rights, and we exercise that discretion where such an error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," or where failure to correct would result in a "miscarriage of justice." *Olano*, 507 U.S. at 736 (first quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936) (alteration in original); and then quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

It is clear here that the district court failed to properly instruct the jury when, although it correctly identified the charged predicate offense, it did not give the elements of that offense. *Cf. United States v. Randall*, 171 F.3d 195, 209-10 (4th Cir. 1999). The

district court also erred when it instructed the jury that "physical assault" is a "crime of violence." Although the district court did not identify a statute or jurisdiction for the predicate offense, the record shows that "physical assault" here could only have been one of two offenses: (1) N.C. Gen. Stat. § 14-33(c)(2), assault of a female by a male at least 18 years of age, or (2) or North Carolina assault at common law. We have previously held that neither of these is a "crime of violence." *See United States v. Vinson*, 805 F.3d 120, 124-26 (4th Cir. 2015).

These are errors. But, "even assuming that [they] . . . 'affec[ted] substantial rights,' [they] do[] not meet the final requirement of *Olano*." *Johnson v. United States*, 520 U.S. 461, 469 (1997) (second alteration in original) (quoting *Olano*, 507 U.S. at 736).

In this case, the indictment charged that Defendant beat one of the women he was prostituting. In more detail, he punched her in the stomach so hard she tilted over, grabbed her by her hair, took her into a bathroom and turned on the water while she was screaming, and kept beating her. She could barely walk afterwards. Defendant's victim testified about the assault at trial, as did a witness. The jury heard, and we have reviewed, a week of testimony similar in nature to what we have just described.

Moreover, in light of Defendant's three life sentences on other convictions, vacating the Travel Act conviction—for which Defendant was sentenced to a 240-month term of imprisonment—would have no practical consequence. Under these circumstances, we cannot say that declining to correct the errors would seriously affect the fairness, integrity, or public reputation of judicial proceedings, nor would it result in a miscarriage of justice. *See United States v. Cedelle*, 89 F.3d 181, 186 (4th Cir. 1996).

13

We therefore will not vacate this conviction.

F

Defendant next appeals the denial of a post-trial motion to withdraw as counsel. "We review the denial of a motion to withdraw for abuse of discretion." *United States v. Blackledge*, 751 F.3d 188, 193 (4th Cir. 2014). If the district court abused its discretion, "the ruling is subject to harmless error review." *Id.* at 194. We consider three factors in deciding whether a district court abused its discretion in denying such a motion: "(1) timeliness of the motion; (2) adequacy of the court's inquiry; and (3) 'whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense.'" *Id.* (quoting *United States v. Gallop*, 838 F.2d 105, 108 (4th Cir. 1988), *abrogated on other grounds by Fields v. Murray*, 49 F.3d 1024 (4th Cir. 1995), *as recognized in United States v. Ductan*, 800 F.3d 642, 652 (4th Cir. 2015)).

During the nearly three years between arrest and sentencing, Defendant had four different attorneys. The first, a federal public defender, withdrew early due to a conflict. The second represented Defendant through the end of trial. At the start of trial, immediately before jury selection, Defendant tendered to the court a handwritten letter complaining about counsel. This triggered a conversation between Defendant and the court wherein Defendant alleged that his counsel was unprepared and inadequate. The court noted that counsel was competent and prepared for trial, but informed Defendant that he had the option of proceeding to trial representing himself. Defendant declined and trial proceeded. Two months after trial, Defendant's counsel filed a motion for inquiry into counsel and to substitute counsel; the motion explained that Defendant alleged there was a conflict of

14

interest, that Defendant was verbally abusing counsel and alleging counsel was "incompetent, ineffective, and [was] conspiring against him," and that Defendant refused to work with counsel and demanded new counsel. J.A. 1229. The court granted the motion and appointed a third attorney for Defendant. Some five months later, this counsel also moved to withdraw. Defendant, believing his attorney was a part of a vast conspiracy against him, refused to cooperate with counsel and had filed a complaint against him with the State Bar. The court described the situation as "extremely frustrating," but granted the motion to withdraw and appointed Defendant's fourth attorney, Counsel Richard Beam. J.A. 1330.

Counsel Beam did not fare better than Defendant's previous attorneys. The same problems arose. Counsel Beam moved to withdraw, the Government filed a response opposing the motion, and the court held a hearing. At the hearing, Counsel Beam explained that Defendant refused to address the draft PSR and would only speak with Counsel Beam about pursuing allegations against other lawyers, including one of Counsel Beam's friends and also other professional colleagues, who had been involved with the case. Counsel Beam had spoken to the North Carolina State Bar, and the Bar had advised that he move to withdraw. The Government took the position that Defendant was the cause of the series of breakdowns in communication with his counsel and that "Defendant's demand for a fifth court-appointed attorney is nothing more than an effort to avoid sentencing." J.A. 1457. Procedurally, the case was waiting on Defendant to file objections to the draft PSR. Although Counsel Beam had objections to file, he could not file them where there was a conflict with the party he represented. The probation officer characterized the situation as

15

a "rarity" in her fifteen-year career. J.A. 1494. The court ultimately issued an eleven-page order denying the motion to withdraw. Counsel moved for reconsideration, and the court again denied the motion.

With the foregoing in mind, we begin our analysis of the three relevant factors. The first factor—timeliness—applies both to the temporal proximity of the motion to trial or another proceeding but also the resulting delay on the overall proceedings. *United States v. Corporan-Cuevas*, 35 F.3d 953, 956 (4th Cir. 1994) ("The court must weigh the defendant's right to choose counsel against the countervailing state interest in proceeding with prosecutions on an orderly and expeditious basis."). As recounted above, Counsel Beam was Defendant's fourth lawyer. Furthermore, twenty months had passed since trial, and Defendant's refusal to cooperate was preventing the case from moving to sentencing. *See United States v. Mullen*, 32 F.3d 891, 895 (4th Cir. 1994) ("In our review of a district court's denial of such a request [to withdraw], we must therefore be mindful of the court's interest in moving its docket."). We conclude that the timeliness factor weighs in favor of affirming the district court's order.

Regarding the second factor—adequacy of the court's inquiry—the district court held an extensive hearing on the motion to withdraw. We describe the hearing above and will not recount it here. We conclude this factor also weighs in favor of affirming the district court's order.

Finally, we turn to the third factor—whether the attorney/client conflict resulted in a total lack of communication. It is clear there was a conflict between Counsel Beam and Defendant. However, Defendant's conduct was a major causative factor. *See United States*

16

*v. Morsley*, 64 F.3d 907, 918 (4th Cir. 1995) ("The district court is not compelled to substitute counsel when the defendant's own behavior creates a conflict."). Counsel Beam stated that Defendant would not "talk to [him] about anything in the PSR," and this was evidenced by the months-long delay in filing Defendant's objections to the PSR. J.A. 1488. Moreover, in its denial of the motion to withdraw, the district court observed that this was the third time Defendant had followed the same general pattern with his court-appointed attorney, i.e., filing allegations against them, refusing to cooperate with them, and filing State Bar complaints. Nevertheless, despite Defendant's behavior, Counsel Beam had visited the jail, filed motions, and even investigated Defendant's allegations of Government misconduct. Reviewing the record, we thus conclude this factor too weighs in favor of the affirming the district court's decision.

Accordingly, the district court was within its discretion to deny Defendant's motion to withdraw as counsel.

G

Defendant next argues that the district court made four sentencing errors. Generally, when considering "whether a sentencing court properly calculated the Guidelines range," we review a court's "factual findings for clear error and its legal conclusions de novo." *United States v. Shephard*, 892 F.3d 666, 670 (4th Cir. 2018). However, because Defendant did not make any objections to his PSR, we review for plain error. *United States v. Strieper*, 666 F.3d 288, 295 (4th Cir. 2012).

Defendant appeals the district court's application of sentencing enhancements pursuant to sections 3B1.1(a), 3A1.1(b)(1), 3C1.1, and 2G1.3(b)(1)(B) of the 2015 U.S.

17

Sentencing Guidelines Manual. These enhancements apply where the court finds the defendant to have been an organizer or leader, harmed a vulnerable victim, committed obstruction of justice, and exerted supervisory control, respectively.

1.      U.S.S.G. § 3B1.1(a)—Organizer/Leader Enhancement

U.S.S.G. § 3B1.1(a) provides for a four-level enhancement if the defendant was an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  A person who is "not criminally responsible for the commission of the offense" is not a participant, and the defendant must have been the "organizer, leader, manager, or supervisor of one or more other participants."  *Id.* cmt. nn.1-2.

Defendant argues that his prostitution enterprise lacked the requisite number of participants to apply the enhancement, as the unindicted victims were not participants for purposes of this Guidelines provision. Defendant cites *United States v. Jarrett*, 956 F.2d 864 (8th Cir. 1992), in which the court concluded that certain people in that case who were transported to work as prostitutes were not participants. *Id.* at 868. *Jarrett* is inapposite. There, the defendant was convicted under 18 U.S.C. §§ 2421 and 2423 of transporting both adults and minors to work as prostitutes. *Id.* at 865. Accordingly, that court determined that these people were not participants merely because they were themselves transported; to be participants they must have "assisted in the unlawful transportation of others."  *Id.* at 868.

Here, the counts at issue pertained to Defendant's operation of an interstate prostitution enterprise. Although the victims were not indicted or convicted, they were part of the enterprise. Where interstate prostitution is the relevant conviction, the prostitutes involved may be counted as participants. *See United States v. Sabatino*, 943 F.2d 94, 101

18

(1st Cir. 1991) (counting five prostitutes among participants of "a pervasive interstate prostitution ring"). Moreover, trial testimony indicates that Defendant oversaw other non-prostitute participants, including his driver and his girlfriend, who also facilitated prostitution.

The district court did not plainly err in applying § 3B1.1(a).

2.      U.S.S.G. § 3A1.1(b)(1)—Vulnerable Victim Enhancement

U.S.S.G. § 3A1.1(b)(1) provides for a two-level enhancement if the defendant "knew or should have known that a victim of the offense was a vulnerable victim." A "vulnerable victim" is an individual who is "unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." *Id.* cmt. n.2. The section does not apply "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline"; for example, if the guideline provides an enhancement for the age of the victim, the vulnerable victim enhancement would not apply unless the victim was "unusually vulnerable for reasons unrelated to age." *Id.*

The counts on which Defendant received this enhancement all involved minor victims. Defendant argues that where an offense already accounts for the victim's age, the victim must be vulnerable due to "physical or mental condition," or "otherwise particularly susceptible to the criminal conduct." *Id.* Defendant claims that victim prostitutes are typically vulnerable in several ways, including being unemployed, having small children, and having troubled home lives; he argues that the Government must distinguish Defendant's prostitute victims as more vulnerable than a typical prostitute victim. Defendant further argues that, regarding one of his victims, he targeted her "not because of

19

a particular vulnerability, but based on her history with [Defendant]." Appellant's Br. at 54.

Defendant glosses over the Government's grounds for vulnerability, presented at the sentencing hearing: "They were young, they were down on their luck. They didn't have a stable home. And that gave him an area to exploit." J.A. 1600. As one minor victim testified, she left the Virgin Islands, alone, at a young age and began living with her aunt, who mistreated and neglected her; she began sneaking out of her house at age 16 to meet Defendant; and she moved into Defendant's house at age 16 shortly after getting pregnant and being kicked out of her aunt's house. Accordingly, she was "particularly susceptible to the criminal conduct," given her lack of a stable home and parental figures. Similarly, the victim whom Defendant allegedly targeted based on her history with Defendant was 16 when she met Defendant and was "staying in hotels because [she] didn't have a house to go to" when she moved in with him. J.A. 766. She too was a vulnerable victim.

Our review is for plain error and the Government presented a series of grounds specific to these victims that could support applying § 3A1.1(b)(1); accordingly, we will not disturb the determination of the district court.

3.    U.S.S.G. § 3C1.1—Obstruction of Justice Enhancement

U.S.S.G. § 3C1.1 provides for a two-level enhancement if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice" regarding the "investigation, prosecution, or sentencing of the instant offense of conviction" and the obstructive conduct related to either the "defendant's offense of conviction" or "a closely related offense." Obstructive conduct occurring before the

20

investigation of the instant offense "may be covered . . . if the conduct was purposefully calculated, and likely, to thwart the investigation" of the offense of conviction. *Id.* cmt. n.1.

Defendant argues it was error to apply this enhancement to his federal kidnapping charge based on obstruction of a previous state kidnapping charge. Both the state and federal charges related to the same kidnapping. The previous state charge had been dismissed when Defendant had the victim submit a false affidavit that she was not kidnapped. According to Defendant, because the victim testified in the federal trial that the affidavit from the state proceeding was false, Defendant's actions did not have any bearing on the federal proceeding; the obstruction did not pertain to the "instant offense," i.e., the federal kidnapping charge only.

As the Guidelines commentary indicates, obstructive conduct before the investigation of the instant offense may be covered if the conduct was "purposefully calculated, and likely, to thwart the investigation" of the offense of conviction. *Id.* Just so here. This Court has held, albeit in an unpublished opinion, that where a defendant obstructed justice in state proceedings on a charge, and the federal investigation had not yet begun, but a federal charge was subsequently brought on a related charge, § 3C1.1 may apply. *See United States v. Hall*, 68 F. App'x 446, 447 (4th Cir. 2003) (unpublished) (per curiam) ("[Section] 3C1.1 makes no distinction between a federal and a state investigation of the instant offense."). The same reasoning applies here.

The district court did not plainly err in applying § 3C1.1.

4.       U.S.S.G. § 2G1.3(b)(1)(B)—Supervisory Control Enhancement

21

U.S.S.G. § 2G1.3(b)(1)(B) provides for a two-level enhancement if the minor victim was "otherwise in the custody, care, or supervisory control of the defendant." This subsection is "intended to have broad application and includes offenses involving a victim less than 18 years of age entrusted to the defendant, whether temporarily or permanently," including "temporary caretakers." *Id.* cmt. n.2(A). The sentencing court should "look to the actual relationship that existed between the defendant and the minor," and not simply the legal status of their relationship. *Id.*

Defendant claims he received the enhancement on Count Four (recruiting a minor to engage in a commercial sex act) because the minor victim was living with him. Defendant argues that the enhancement should not apply because the minor victim's relationship to Defendant was "almost exclusively related to his role as a pimp and the underlying crimes." Appellant's Br. at 57. But the record shows that was not the case. Defendant acted as a "temporary caretaker" for her, thereby qualifying him for the enhancement. The victim moved in with Defendant when she was under 18, after being kicked out of her aunt's house. The victim testified she relied on Defendant to drive her to high school. The record is replete with additional examples of Defendant providing for the victims, including this minor victim, in his prostitution ring—they all lived together in the same house and moved as a unit to various cities, where Defendant rented the hotel rooms in which they stayed. *See* J.A. 491 (testimony that the enterprise operated "kind of like a family").

We hold that the district court did not plainly err in applying § 2G1.3(b)(1)(B).

H

Having addressed Defendant's other grounds of appeal, we turn to his allegation that there was a complete miscarriage of justice. We have reviewed the record and find that Defendant's miscarriage of justice claim is meritless.

III

In conclusion, we affirm the district court as to all issues.

*AFFIRMED*